UNITED STATES of America,
Plaintiff-Appellee,

·v.

Frank FALCO, Defendant-Appellant.

No. 72-2429.

United States Court of Appeals,
Ninth Circuit.

May 23, 1973.

David M. Rothman (argued), Beverly Hills, Cal., for defendant-appellant.

John K. Cameron, Jr., Asst. U. S. Atty. (argued), William D. Keller, U. S.

Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before ELY and TRASK, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

### STATEMENT OF THE CASE

A three count indictment was returned against the defendant-appellant Frank Falco (Falco) charging violation of 18 U.S.C. Section 371, Conspiracy to Embezzle and Steal Government Property; 18 U.S.C. Section 641, Theft of Government Property; and 18 U.S.C. Section 111, Assaulting a Federal Officer.

The government dismissed Count 3 prior to trial and the jury found Falco guilty on Counts 1 and 2. He was sentenced concurrently on each count to the custody of the Attorney General for two years, with a suspension of sentence and probation arrangement conditioned upon confinement in a jail-type institution for a period of sixty days. Falco served the jail-type sentence and appeals. We note jurisdiction under 28 U.S.C. Sections 1291 and 1294 and affirm.

### FACTS

We narrate the evidence as follows:

Steve Freeman (Freeman) had occasionally acted as a Treasury Department and stolen credit card informant. He would be paid for any fruitful leads.

On April 3, 1972, Freeman picked up as hitchhikers Falco and his wife, both indigent persons who had been seeking welfare benefits.

Conversation developed about traffic and dealing in "hot" credit cards and counterfeit coins and currency. The testimony is in conflict as to which of the men made first overture of buying and selling. In any event Falco indicated he could get counterfeit currency if Freeman could use it. A stop was made and Falco faked a telephone call to his "source" and a transaction meeting was arranged for 3 o'clock that afternoon at Norm's Restaurant.

Falco contacted an acquaintance, David Brown, and told him in the presence of their respective wives of the encounter with Freeman and his plan to "rip him (Freeman) off." Falco borrowed $20.00 from Brown, picked up a new crisp $20.00 bill and the foursome, in concert, went to the rendezvous at Norm's.

Freeman had contacted Treasury Agent Carlon and together met with the Falco party.

Falco without knowledge of Carlon's and Freeman's undercover roles showed them the represented counterfeit, but genuine, $20.00 bill and demanded $300.00 before turning over the agreed amount of counterfeit money currency and took back the $20.00 bill.

Carlon responded to the ruse and handed over $300.00 in government funds to Falco who in turn handed the funds to the wives who departed on the purported errand to obtain and bring back the counterfeit currency for delivery to Carlon.

After some twenty minutes Falco announced, "There isn't any counterfeit. We're leaving now. Don't move. He's got a gun," pointing to David Brown. "If you move, he'll kill you." Falco then stood up and said, "There's an individual outside will blow your head off. Don't try to follow us." Falco was arrested by surveillant agents but not without some physical efforts. The wives were found and the funds were recovered.

### ASSIGNMENTS OF ERROR

Falco asserts four assignments of reversible error by the trial court presenting the four issues delineated in the following:

### DISCUSSION

Issue 1: *Was evidence of physical efforts during the course of Falco's arrest*

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

**1378**

by government agents improperly excluded?

■ Count 3 alleging an assault on a federal officer arose from the incidents surrounding Falco's arrest after the alleged commission of the crimes designated in Counts 1 and 2 and was dismissed before trial. We conclude this assignment is without merit.[1]

Issue 2: *Was it improper to allow impeachment of Falco with a prior California conviction of crime?*

■ Early in 1970 Falco was convicted of the crime of second degree burglary within the State of California, where that crime is treated as a felony (if sentenced to imprisonment in a state penitentiary) or as a misdemeanor (if sentenced to a jail) depending on the sentence entered.

Upon that conviction Falco was granted four years probation. One of the conditions of the probation was that Falco serve 180 days in the county jail which he served less credit for time served.

Falco contended at his trial (June, 1972) that he had served the jail sentence and accordingly had not, as yet at least, been sentenced upon the conviction to imprisonment in a state penitentiary so as to classify his California crime as a felony. He urges that he was improperly impeached as a witness on his own behalf by use of a misdemeanor conviction.

The rule generally recognized in California is:

"... the (crime) stands as a felony for every purpose up to judgment, ... but if the judgment is for a misdemeanor it is deemed a misdemeanor for all purposes thereafter (sic)—the judgment not to have a retroactive effect ..." People v.

Banks, 53 Cal.2d 370, 381–382, 1 Cal. Rptr. 669, 677, 348 P.2d 102, 110 (1959).

When Falco was granted probation the state proceedings were suspended *without* an entry of judgment (sentence of imprisonment to neither a state prison nor jail). "He (did), however, for some specific purposes—for administration of the probation law and other laws expressly made applicable to persons so situated—stand convicted of a felony." Id. *Banks*, 387, 1 Cal.Rptr. 680, 348 P. 2d 113. The serving of jail time was "a condition of probation (and not) imposition of sentence to a county jail." Id. *Banks*, 385, n. 8, 1 Cal.Rptr. 679, 348 P. 2d 112.

■ Falco's testimony conflicted with that of Freeman concerning the negotiations for counterfeit currency (entrapment of Falco, or setup of Freeman?). The California crime was recent and of similar nature to the alleged crimes. Accordingly, the trial court did not abuse its discretion in allowing the impeachment nor was the evidence of a prior felony conviction otherwise prejudicial to a fair trial for Falco. Burg v. United States, 406 F.2d 235 (9th Cir. 1969); Shorter v. United States, 412 F.2d 428 (9th Cir. 1969); see cases collected in Modern Federal Practice Digest, Witnesses Key No. 337(5) and (6).

Issue 3: *Must the government prove that Falco knew the stolen property belonged to the government?*

■ The answer is no for the reason that knowledge of the government's ownership of the property stolen is not a material or necessary element of 18 U.S. C. Section 641. United States v. Howey, 427 F.2d 1017 (9th Cir. 1970), and Baker v. United States, 429 F.2d 1278 (9th Cir. 1970).

> It might very well color the minds of the jurors if they hear two different versions about it and it might be very detrimental to the defendant. It just seems to me to be totally irrelevant and a dangerous area to intrude into in view of the dismissal of the Third Count."

---

1. The trial court sagely commented: "... (if the evidence was admitted it would put the court) in a position of having to entertain from the government some kind of instruction that the defendant attempted to flee the scene and that consciousness of guilt is involved, ...

Morrissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1951), is no solace to Falco as the holding there simply reiterates the proposition that a felonious intent to steal property is an essential element of the offense under 18 U.S.C. Section 641. The jury so found here.

Issue 4: *Was a defense of unlawful entrapment presented under the evidence?*

Had Falco delivered counterfeit currency in exchange for the $300.00 tendered him, it might well be that his testimony would have presented a valid unlawful entrapment question for the jury, thus requiring the trial court's proper instruction as to the law on unlawful entrapment under the rationale of Notaro v. United States, 363 F.2d 169 (9th Cir. 1966) and 388 F.2d 680 (9th Cir. 1967), and United States v. Walton, 411 F.2d 283 (9th Cir. 1969).

However, as Falco's brief, at page 21, candidly states

". . . the evidence did not involve the usual entrapment defense: here (Falco) did not commit the crime of selling counterfeits (the crime in the mind of the informer and agent). (He) allegedly committed a different crime, theft."

"There is no case directly on this point."

Falco argues that the creative force bringing about his crime was the wrongful conduct of Freeman and Carlon and relies upon the rationale for the unlawful entrapment rules enunciated in United States v. Chisum, 312 F.Supp. 1307 (C.D.Cal.1970).

Falco's reliance on *Chisum,* supra, is ill-founded. The sole holding of the case is that the sale of counterfeit currency by a government agent to the defendant, who was ready and willing to buy and resell, is unlawful entrapment as a matter of law and a complete defense to the prosecution of the crime of knowingly receiving such counterfeit currency with intent to pass them as genuine.

"When the government supplies the contraband, the receipt of which is illegal, the government cannot be permitted to punish the one receiving it. To permit the government to do so would be to countenance violations of justice. As Justice Roberts stated in Sorrells, 'It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law.' [Sorrells v. United States], 287 U.S. 435 at 457, 53 S.Ct. 210, 77 L.Ed. 413 (separate opinion)."

The conduct of the agents in Chisum's case is wholly distinguishable from this case.

True, Freeman and Carlon did offer Falco an opportunity to illegally traffic in counterfeit currency had he had the ability and inclination to do so. The conduct was that of "stealth and strategy" and, generally, dirty business; albeit, lawful and a far cry from that type of governmental durational and pervasive activity condemned as *"creative activity"* in Sherman v. United States, 356 U.S. 369 at 372, 78 S.Ct. 819 at 820, 2 L.Ed.2d 848; Greene v. United States, 454 F.2d 783 at 786 (9th Cir. 1971); and *Chisum,* supra.

Falco was not supplied with contraband, nor ingredients thereof, to his prejudice or charge, nor was he induced by forceful persuasion or pressure at the hands of Freeman and Carlon to engage in illegal activity leading to a charge against him. It was Falco alone who brought the charges under Counts 1 and 2 down on his head. For it is manifest here that Falco never had any ability nor intention or inclination, either by his own predisposition or inducement on the part of the agents, to deliver counterfeit currency to the agents. Quite to the contrary he alone conjured the plan to "rip off the crooks" (Freeman and Carlon), by faking his source and ability to deliver counterfeit currency and with his confederates attended the meeting for the sole purpose of receiving and then stealing the exchange money—and did just that.

The judgment of conviction and sentence is affirmed.