**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Allen WILSON, Defendant-Appellant.**

No. 74–2523.

United States Court of Appeals, Ninth Circuit.

June 7, 1976.

Irving Hill, District Judge for the Central District of California, sitting by designation, concurred specially and filed an opinion.

David B. Rosenthal (argued), of Ramsy & Rosenthal, Richmond, Cal., for defendant-appellant.

Jerry K. Cimmet, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

OPINION

Before KOELSCH and HUFSTEDLER, Circuit Judges, and HILL,* District Judge.

HUFSTEDLER, Circuit Judge:

Wilson appeals from his conviction for bank robbery. Wilson contends that the district court erred in denying his motion to suppress items obtained from a warrantless search of Willis's suitcase, in rulings on several evidentiary matters, and in instructing the jury on circumstantial evidence.

The day before the robbery Wilson, his codefendant Murray, Taylor and Willis left Los Angeles and spent the evening together in the apartment of Sharon McKee in Oakland. Wilson and Taylor thereafter spent the night in a motel, while Murray and Willis remained all night in McKee's apartment. Wilson, Murray, and Willis each left a suitcase at the apartment.

At approximately 10:20 the next morning, three armed men wearing ski masks robbed the bank. Immediately afterward, a police officer saw a man wearing a ski mask and surgical gloves hurriedly enter a car that was waiting in front of the bank with a driver inside and the motor running. The car drove away rapidly amid gunfire from other police officers in pursuit. The officer then saw Murray walking quickly from the direction of the bank with money protruding from his waistband. He was trying to remove a surgical glove from his hand. The officer arrested Murray. The money in Murray's waistband turned out to be bait money from the bank. A ski mask and a revolver were discovered near the place of the arrest. The fleeing car crashed soon after it left the vicinity of the bank. Two men were seen running from the wreck, one in the direction of a shed where Wilson was soon found and arrested. The wrecked car had bullet holes in it and contained some of the money taken from the bank.

By early afternoon, the investigating officers learned that both Wilson and Murray had spent the previous evening at an Oakland apartment belonging to a "Sharon." They identified "Sharon" as Sharon McKee and placed her apartment under surveillance. About 3:30 p. m., F.B.I. agents, with the consent of McKee but without a warrant, entered the apartment and found the three suitcases. McKee told the agents that the suitcases were not hers and that they had been left by visitors the night before. At the agents' direction, McKee opened one of the suitcases (the one belonging to Willis); the agents themselves opened the other two. In Willis's suitcase the agents found wallets and identification papers belonging to Willis, Wilson, and Murray. These items were used to show that the three persons were associated with each other and that they sought to conceal their identification documents in case they were caught. Wilson moved to suppress the contents of the suitcases as the product of an illegal search. The district court rejected the motion on the ground that McKee validly consented to the suitcase searches.

■ Although McKee could effectively consent to the agents' search of her apartment, she had neither actual nor apparent

---

* Honorable Irving Hill, Central District of California, sitting by designation.

authority to consent to the suitcase searches. She disclaimed any ownership of or possessory interest in them. She had neither the "common authority" over nor the "mutual use" of the suitcases that could give constitutional validity to her consent. (*United States v. Matlock* (1974) 415 U.S. 164, 171 & n.7, 94 S.Ct. 988, 39 L.Ed.2d 242; see *Corngold v. United States* (9th Cir. 1966) 367 F.2d 1, 6–8.)

▪ Wilson had standing to challenge the search of his own suitcase, but the evidence that he sought to suppress was found during the search of Willis's suitcase. He has standing to attack the search of Willis's suitcase only if he had a reasonable expectation of privacy with respect to that case. His expectation perhaps could be implied if he had entrusted his belongings to Willis for storage in Willis's bag. (*See Mancusi v. De Forte* (1968) 392 U.S. 364, 368–70, 88 S.Ct. 2120, 20 L.Ed.2d 1154; cf. *Jones v. United States* (1960) 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697). From the evidence concerning Willis's association with Wilson and the finding of Wilson's packet of papers in Willis's suitcase, an inference can be drawn that Wilson gave these items to Willis for storage in the latter's suitcase. However, that inference is dispelled by Wilson's own testimony in which he said that these items were in his own bag when he left McKee's apartment. He offered no explanation for the presence of his belongings in Willis's suitcase. Under these circumstances, he is in no position to claim any expectation of privacy in Willis's suitcase. Because he lacked standing to challenge that search, the error on the consent issue was harmless.

▪ Wilson also argues that the court abused its discretion in admitting evidence of his prior felony convictions in 1969 for receiving stolen property and in 1971 for attempted robbery. Evidence of the convictions was admitted for the purpose of impeaching Wilson's credibility. He contends that the convictions were too remote to be probative and that they were sufficiently similar to the charged crime as to be unduly prejudicial.[1] Both arguments are foreclosed by our decision in *United States v. Hatcher* (9th Cir. 1974) 496 F.2d 529. In *Hatcher* we found no abuse of discretion when the district court admitted evidence of three prior convictions for the same kind of crime, at least one of which was substantially more remote than Wilson's earliest conviction. (*See also United States v. Falco* (9th Cir. 1973) 478 F.2d 1376, 1378 (similar crime); *United States v. Stroud* (9th Cir. 1973) 474 F.2d 737, 739 (seven-year-old conviction); cf. Fed. Rules Evid. 609(a), (b).) As in *Hatcher,* Wilson's prior crimes reflected adversely on his honesty and integrity and were thus relevant to the credibility question.

▪ Second, he argues that the trial court erred in refusing to give a proffered jury instruction about the special pitfalls of circumstantial evidence. The refusal was proper; rejection of instructions like the one proposed has been affirmed by this court many times. (*See, e. g., United States v. Heck* (9th Cir. 1974) 499 F.2d 778, 790; *United States v. Ellsworth* (9th Cir. 1973) 481 F.2d 864, 872.)

Finally, Wilson claims error in permitting the cross-examiner to ask him about his knowledge of Willis's prior conviction for murder and Taylor's prior conviction for manslaughter. Wilson testified that he was unaware of his companions' plan to rob a bank, and he gave an elaborate, unconvincing explanation for his involvement with Willis and his presence near the automobile crash. The gist of his story was that Willis had promised him $500 to pick up an attache case from a man he was to meet at a

---

1. Insofar as Wilson's arguments amount to a claim that we should adopt the rule announced in *Luck v. United States* (1965) 121 U.S.App. D.C. 151, 348 F.2d 763, and explained in *Gordon v. United States* (1967) 127 U.S.App.D.C. 343, 383 F.2d 936, we note that this Circuit has previously declined to follow *Luck.* (*United*

*States v. Davis* (9th Cir. 1974) 501 F.2d 1344, 1345; *United States v. Villegas* (9th Cir. 1973) 487 F.2d 882.) In the District of Columbia Circuit the *Luck* rule has been changed by statute. (*See United States v. Villegas, supra,* at 883.)

886

place that turned out to be near the crash site.

 When a defendant claims that he did not know of his companions' disposition to commit the crime charged, evidence of his knowledge that they had been convicted of previous similar crimes is probative. That evidence does not suggest merely a general "criminal disposition"; it shows a willingness to take the risks of engaging in that particular kind of criminal enterprise. (*See, e. g., Asher v. United States* (9th Cir. 1968) 394 F.2d 424, 429; *cf.* Fed. R. Evid. 404(b).)[2] Here, however, the prior crimes were not for bank robbery or any similar crime. Wilson's knowledge of his companions' convictions for manslaughter and murder has slight, if any, relevance to his knowledge of their intention to rob a bank. Assuming that one can possibly infer from a penchant for fatal violence, a predisposition toward bank robbery, the probative value of that proof is so far outweighed by its potential prejudice as to prevent its reception. However, error in the admission of this impeaching evidence does not justify a reversal. Although the evidence against him was not overwhelming, as it was in respect of his codefendant Murray,[3] the Government had presented a very strong case against him and we are unconvinced that the admission of this evidence influenced the outcome of the case.

Affirmed.

IRVING HILL, District Judge (specially concurring):

I concur in the result. I also concur in the opinion with the sole exception of the portion which discusses the trial judge's admission of evidence of Wilson's knowledge of the prior criminal convictions of his companions. I agree that if the admission of

this evidence was error, the error would not justify a reversal. But I disagree with the holding that the admission of such evidence was error. Under the facts of this case, I believe the admission of this evidence as part of the government's cross-examination, was within the trial court's discretion.

was willing to commit the crime. The questions to which he objected related to his knowledge of and participation in a robbery undertaken by his confederate the day before. (*Asher v. United States, supra,* at 428–29.)

3. *United States v. Murray* (9th Cir. 1976) 530 F.2d 856.

2. In *Asher* we were presented with a very strong case for admitting the evidence of prior criminal activity. The defendant in *Asher,* unlike Wilson, did not claim complete ignorance of the planned robbery. On the contrary, he encouraged the robbery, participated in planning it, and assisted the robber in his escape. His defense was that when he drove the robber to the bank, he did not believe that the robber