GLEASON E. ELLIOTT *v.* STATE OF INDIANA.

[No. 974S181. Filed October 9, 1974.]

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

## ON PETITION TO TRANSFER

PRENTICE, J.—This case is before us upon the State's petition to transfer from the Court of Appeals, District 2. The decision and opinion of that Court was filed on April 16, 1974 and appears in 309 N.E.2d 454. Rehearing was denied May 22, 1974.

The petition to transfer is now granted. The decision of the Court of Appeals, District 2 is hereby vacated, and the judgment of the trial court is affirmed.

The sole issue in this case is the ruling upon a motion to suppress evidence. The trial court denied the motion.

The evidence offered at the hearing was scant. The officer who made the arrest testified merely that he had received information that a lieutenant of a notorious drug dealer

was to make a narcotic delivery at 3504 Evergreen Street. He and an associate immediately went to that address where they saw the defendant exiting. The defendant was known to have a police record of multiple arrests on drug related charges and at least one conviction. He was in the company of two companions, both of whom were known drug users. The building at 3504 Evergreen Street was an apartment building, but the number of housing units therein was not disclosed. There was no known association between the defendant or his companions and the narcotics dealer for whom the delivery reportedly was to be made.

The police officers stopped the three for interrogation and identified themselves. The arresting officer saw a bulge in the defendant's pocket, which caused him to thus fear for his safety, and he "patted down" the defendant and found a revolver in his back pocket.

Assuming that the officer's source of information was reliable, the circumstances related warranted a cursory investigation. Since the officer had no warrant, the burden at the hearing was upon the State to show that the police action resulting in the seizure fell within one of the exceptions to the warrant requirements of the Fourth Amendment. *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874 and cases there cited. Although minimally so, this burden was fulfilled when the officer testified as to the circumstances, i.e. a recent drug delivery, or one about to be made, and the defendant's known propensities for narcotics. It is astonishing that the State did not volunteer testimony from which the trial judge could make an independent judgment as to the reliability of the officer's information concerning the drug delivery, in order that the reasonableness of the action might be better assessed. It is equally astonishing that the defendant did not cross examine the officer concerning the source of the information and its reliability, because at that stage of the proceedings, the reasonableness of the officer's actions had been established prima faciely. The trial

judge might have been justified had he disbelieved the officer's testimony concerning the reported drug delivery, inasmuch as it was not supported in any manner. However, he was not required to disbelieve it or to presume that the information the officer acted upon was so unreliable as to render reliance thereon unreasonable. Further, we must keep in mind that we are here determining the reasonableness of action predicated upon probabilities and not with a determination of guilt.

It is immaterial whether the bulge in the defendant's pocket was seen before or not until after the detention. The detention was lawful regardless. If the bulge was in fact observed prior to the detention, the cause for detention was even stronger, and we see no reason to conclude that, because the officer was facing the defendant, it would have been impossible for him to have observed a bulge in his clothing caused by an object reposed in his back pocket.

> We view the detention and limited search procedure as a two-step process. The cause for search need not necessarily be apparent to justify a detention. It may arise during the detention.

Viewing the evidence most favorable to the State and resolving the ambiguities in favor of the trial court's finding as required by our case law, *Capps* v. *State* (1967), 248 Ind. 472, 229 N.E.2d 794; *Bowles* v. *State* (1971), 256 Ind. 27, 267 N.E.2d 56; *State* v. *Smithers, supra,* we hold that the detention and search were lawful as gauged by the tests of *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 and *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738.

Defendant, upon the strength of *McCray* v. *Illinois* (1967), 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62, urges that the State's failure at the hearing to demonstrate that the probability of accuracy of the officer's information regarding the drug delivery was high required the trial court to sustain the motion to suppress. The issue in that case, however, was

the extent of the State's burden to show probable cause while expressly declining to reveal the source of its information. He also relies upon *Bowles* v. *State, supra,* but in that case the evidence affirmatively disclosed that the information acted upon had no reliability. In the case at bar, the defendant did not challenge the reliability of the officer's information.

The decision of the trial court is affirmed.

Arterburn, C.J., Givan and Hunter, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DEBRULER, J.—Since *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, a stop by a police officer has been recognized as a "seizure". As such, the stop must be reasonable in order to avoid the Fourth Amendment proscription against "unreasonable searches and seizures". The State must prove its reasonableness in the context of the situation, and failure to do so makes the stop illegal. A frisk or pat down of the detained person in an attempt to find a weapon, is considered a "search". *Terry* v. *Ohio, supra.* When the stop is illegal, a subsequent pat down or frisk is illegal, and evidence found in that limited search must be suppressed.

To show that the stop was reasonable, the State must show at the suppression hearing that certain relatively objective standards were met:

> "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21.

The basic purpose for this requirement is explained in the next sentence:

> "The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances."

This means that the State, when it has not secured a warrant from a magistrate before a seizure, must present to the court in a suppression hearing enough material for the magistrate to evaluate the reasonableness of the officer's search without a warrant. The court must "examine the *facts known to the officers at the time they stopped*" appellant. (Original emphasis.) *State* v. *Smithers* (1971), 256 Ind. 512, 517, 269 N.E.2d 874, 877.

The officer who conducted the stop of appellant presented the following testimony to the trial court:

"A. On that date, approximately 4:15 P.M., I had received information that one of Fred Johnson (inaudible) was to deliver a narcotic drug —"

The next question suppled the address:

"Q. Uh, you said that you were in the 3500 block of North Evergreen, and for what reason?"

And the officer answered:

"A. As I stated, that we were on our way there after we were told that drugs were to be delivered at 3504 Evergreen Street, and we went immediately to that location." *Elliottt* v. *State* (1974), Ind. App., 309 N.E.2d 454, 457.

That testimony constituted the entire body of fact which the trial court had about the source of the officer's information and the exact message.

*Adams* v. *Williams* (1972), 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612, held that personal observation was not required in order to show the reasonableness of a stop. A tip could justify the officer's search and meet the State's burden of reasonableness. But, the tip had to be reliable. In *Adams*, the officer was justified in his stop:

"The informant was known to him personally and had provided him with information in the past. . . . The informant here came forward personally to give information that was immediately verifiable at the scene." 407 U.S. at 146.

Elsewhere, *Adams* noted that a tip might justify police response "when a credible informant warns of a specific impending crime." 407 U.S. at 147. As far as we or the trial court know, the tip in this case did not meet even this quite loose suggestion of a justification. The information here could not possibly be compared with the actual situation in the *Adams* case. No known and trusted informant has been introduced in the case before us. No information to verify his statement before, or even after, the stop was ever found.

The majority is willing to assume that the officer's source of information was reliable. I do not agree that the trial court could assume reliability. The State must fit its seizure without a warrant into the *Terry-Adams* exception to the warrant requirement. The State must demonstrate the reasonableness of the search. That burden is not met in cases such as this if the State presents no evidence about the informant and no evidence that the tip was inherently reliable. The defendant has no legal duty to challenge the sufficiency of the State's evidence. Rather, the Fourth Amendment protection exists in each instance of a seizure and is put into question by the motion to suppress evidence.

The key to determining the reasonableness of a stop which is not based on police observation is the reliability of the tip. The court knew nothing about the informant, or even whether there was one specific individual informant. The officer did not testify that he himself had talked to an informant. The court did not know how the officer received his information or where he was at that time. Was the information given anonymously? Was it received within the police department, so that the officer who depended upon the information knew of it only second or third hand? If there was an informant, had he given reliable information in the past? The State did not satisfy the minimal requirement of *Adams* v. *Williams, supra:* a tip from a credible informant. "I received information. . . ." is inadequate evidence to allow a

court to determine that the State is protecting its citizens from police misconduct.

With no information about the informant, the court should have required that the information be verifiable at the scene, *Adams* v. *Williams, supra,* or accurately predict a certain situation which the officer could personally verify. *Draper* v. *U.S.* (1959), 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. The tip did not report an already committed crime. Contrast, *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457. It did not mention appellant's name. Nor, as far as the stopping officer knew, was appellant in the category of "Fred Johnson's [lieutenants]". Even if the tip had been from a trusted informant, when appellant was not named in the tip, the officer should have observed or investigated before stopping appellant on the basis of his narcotics use and one narcotics conviction. His innocent conduct could not provide a reason for stopping him merely because of his location. The majority opinion would allow the police to stop any known drug user who appeared to have come from the apartment building indicated in the tip.

I would also point out that our Legislature enacted a statute in 1969, the year after *Terry* was handed down, which synthesized "stop and frisk" law for Indiana. IC 1971, 35-3-1-1, being Burns § 9-1048. In Indiana, a legal stop depends upon the officer's having reasonably inferred "from the observation of unusual conduct under the circumstances and in the light of his experience, that criminal activity" is afoot. The stop in this case was not the result of "observation of unusual conduct". The officers saw appellant leave a building just as they drove up and stopped him immediately. Thus, the Indiana statute, which legitimated police investigative stops on less than probable cause, will not legitimate the officer's stop of appellant. The seizure was unconstitutional and denied appellant the protection of the Fourth Amendment.

NOTE.—Reported at 317 N.E.2d 173.