**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Billy Ray MURRAY,
Defendant-Appellant.**

**No. 74–2521.**

United States Court of Appeals,
Ninth Circuit.

March 3, 1976.

H. Jesse Arnelle (argued), Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Jerry K. Cimmet, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

OPINION

Before KOELSCH and HUFSTEDLER, Circuit Judges, and HILL,* District Judge.

HUFSTEDLER, Circuit Judge:

Murray appeals from his conviction for bank robbery. He claims error in the denial of his motion to suppress items obtained from a warrantless search of three suitcases and complains that the prosecutor commented upon his failure to testify. We affirm the conviction.

Murray and a codefendant, Wilson, were indicted and tried for the robbery

* Honorable Irving Hill, Central District of California, sitting by designation.

of an Oakland bank.[1] A third person, Willis, was indicted but not tried because he was a fugitive. The day before the robbery the trio and a fourth man, Taylor, left the Los Angeles area and spent the evening together in the apartment of Sharon McKee in Oakland. Wilson and Taylor thereafter spent the night in a motel, while Murray and Willis remained all night at McKee's apartment. Wilson, Murray, and Willis each left a suitcase at the apartment.

At approximately 10:20 the next morning, three armed men wearing ski masks robbed the bank. Immediately afterward, a police officer saw a man wearing a ski mask and surgical gloves hurriedly enter a car that was waiting in front of the bank with a driver inside and the motor running. The car drove away rapidly amid gunfire from other police officers in pursuit. The officer then saw Murray walking quickly from the direction of the bank with money protruding from his waistband. He was trying to remove a surgical glove from his hand. The officer arrested Murray. The money in Murray's waistband turned out to be bait money from the bank. A ski mask and a revolver were discovered near the place of the arrest. Wilson was later apprehended after the escape vehicle crashed.

By early afternoon, the investigating officers learned that both Wilson and Murray had spent the previous evening at an Oakland apartment belonging to a "Sharon." They identified "Sharon" as Sharon McKee and placed her apartment under surveillance. About 3:30 p. m., FBI agents, with the consent of McKee but without a warrant, entered the apartment and found the three suitcases. McKee told the agents that the suitcases were not hers and that they had been left by visitors the night before. At the agents' direction, McKee opened one of the suitcases (the one belonging to Willis); the agents themselves opened the other two. In Willis' suitcase the agents found wallets and identification papers belonging to Willis, Wilson, and Murray. These items were used to show that the three persons were associated with each other and that they sought to conceal their identification documents in case they were caught. Murray moved to suppress the contents of the suitcases as the product of an illegal search. The district court rejected the motion on the ground that McKee validly consented to the suitcase searches.

We do not now decide whether McKee's consent was valid or whether the suitcase searches were lawful. Even if the searches were unlawful and the evidence should not have been admitted against Murray, the other evidence of his guilt was so overwhelming that the alleged error was harmless beyond a reasonable doubt. Murray's claim of improper comment by the prosecutor does not change this result. Murray did not take the stand, but his wife offered a nonincriminating explanation for his trip to the Bay Area. She testified that Murray told her that he was going to visit a cousin in Berkeley. In closing argument, the prosecutor challenged the wife's story by calling attention to the fact that the cousin had not been produced. Murray characterizes this argument as an impermissible indirect reference to his failure to take the stand. It cannot reasonably be so construed; the prosecutor's argument would have been met if the cousin, and not Murray, had testified. (*See United States v. Rebon-Delgado* (9th Cir. 1972) 467 F.2d 11, 13. The prosecutor's remarks fall within the ambit of fair and proper argument.

The judgment of conviction is affirmed.

---

1. Wilson's appeal was subsequently severed from that of Murray by an order of this court.