GEORGE B. HUDSON *v.* STATE OF INDIANA.

[No. 1075S305. Filed September 14, 1976.]

*Larry R. Champion*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Joseph J. Reiswerg*, Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged by two indictments, each in two counts. Count 1 of the first indictment charged armed rape and Count 2 charged rape. Count 1 of the second indictment charged felony murder and Count 2 charged premeditated murder. Trial by jury resulted in verdicts of guilty on each charge. Appellant was sentenced to the Indiana Department of Corrections for a period of 15 years on the charge of armed rape and to 10 years on the charge of rape. Appellant was also sentenced to a concurrent term of life imprisonment in the Indiana State Prison on the verdict of felony murder while the sentence on the verdict of premeditated murder was held in abeyance.

The record reveals the following evidence: Gerald I. Hendricks, Jr. and Danny Parker lived together in Indianapolis. Kathleen Bowers, a friend of Parker, arrived at his house between 11:00 and 11:30 on the night of April 17, 1974.

Miss Bowers had been talking with Parker about 15 minutes when appellant knocked at the door. When Parker opened the door appellant put a revolver in his face and told him that he was looking for someone who had thrown a brick through his car window. While appellant was still looking around the house, Hendricks returned home. Appellant had Parker bind Hendricks' hands with a leather thong and then had Miss Bowers bind Parker's hands. Appellant then ordered the three of them into a bedroom.

Appellant then told them his true purpose in coming was to kill Hendricks and Parker for "ripping off" a quantity of drugs in Talbott Village. Appellant tied the legs of Parker and Hendricks and then raped Miss Bowers at gunpoint.

After tying up Miss Bowers appellant collected money and other valuables from around the house, including $100 from Parker's wallet. Appellant left the house to start Hendricks' auto but before he left he turned up the volume on radios in the bedroom and the living room.

He then reentered the bedroom, patted each of the victims and said goodbye. Appellant shot Hendricks in the back of his head and then shot Parker and then Miss Bowers. Appellant then drove away in Hendricks' car. Both Parker and Miss Bowers saw Hendricks jerking and convulsing from the trauma to his brain.

Parker was shot through the right cheekbone and did not lose consciousness. Miss Bowers was shot in the head too but the bullet did not penetrate her skull. Miss Bowers heard Parker call her and she managed to free herself and Parker. Parker left through a window for help while Miss Bowers, a certified respitory therapist, attempted to resuscitate Hendricks. Hendricks' heartbeat was erratic and his breathing labored. He died within ten minutes.

Although appellant was wearing gloves Miss Bowers noticed the design of a ring he was wearing through a hole in his glove. She made a sketch of the ring design for police.

When appellant was arrested he was wearing a ring, the design of which matched that drawn by Miss Bowers.

Appellant claims the trial court erred in allowing the State to file a supplemental list of witnesses and in permitting those witnesses to testify at trial. Appellant's attorney was served with a supplemental list of witnesses on the 16th day of June. On June 17, after the jury was chosen, the prosecutor filed a list with the court over appellant's objection. This Court has previously stated that the appropriate remedy in such a situation is a continuance. Owens v. State, (1975) 263 Ind. 487, 333 N.E.2d 745, 48 Ind. Dec. 725. The trial court offered to continue the cause so that the witnesses could be examined. However the appellant declined. He now claims that had he accepted a continuance he would have waived his request for early trial. It was appellant who sought to have the discovery order a continuing one. He cannot now be heard to complain because the State complied with that order. He was offered a continuance which he declined. It is not uncommon for one right to be limited in order that other rights and privileges be safeguarded to afford due process. Such is the case where a change of venue must be had in order to guarantee a fair trial due to an inordinate amount of prejudicial publicity. In the case at bar the trial court acted properly.

Appellant next urges the trial court erred in overruling his motion for mistrial based upon a witness' identification of a billfold as one taken from the appellant. The record indicates that a police officer testified that when he took custody of appellant in Elkhart, Indiana, appellant identified certain items as belonging to him. The officer placed these items in an envelope and deposited them in the police property room. When the envelope was opened at the trial by the officer a billfold was discovered in the envelope. The officer testified that the billfold was one which appellant had identified as his. At a hearing out of the presence of the jury it was discovered that the billfold

was in fact one found at the scene of the crime and was not among the items belonging to appellant. The billfold which was identified as State's Exhibit 4 had not yet been offered into evidence when appellant moved for mistrial. The court denied the motion for mistrial and in so doing gave the following admonition to the jury:

> "THE COURT: Ladies and Gentlemen of the Jury, before you went into the Jury room, some articles were displayed here by this police officer, which have not been admitted into evidence. You are now instructed to disregard any thoughts you may have gleaned from them at this point because at this point in time they mean nothing. Do you understand? Just obliterate the whole thing from your minds. Don't pay any attention to it. Very well."

We hold that the admonition by the trial court was sufficient to cure the erroneous identification. *Hendley* v. *State*, (1974) 160 Ind. App. 338, 311 N.E.2d 849, 42 Ind. Dec. 211.

Appellant next claims the trial court erred in overruling his objection to the admission of a sketch of a ring design made by Miss Bowers. Appellant urges the drawing should have been excluded because it was not mentioned in response to the court's discovery order. There is some question of whether a drawing would have come within any of the headings of the discovery order. Nevertheless, assuming arguendo that the drawing was within the purview of the order, it cannot be said that the court erred in admitting the drawing. Discovery in a criminal case is discretionary with the court. *Owens* v. *State, supra; State ex rel. Keller* v. *Cr. Ct. of Marion Cty.*, (1974) 262 Ind. 420, 317 N.E.2d 433, 44 Ind. Dec. 117. The sanctions and remedies of aggrieved parties also lie within that discretion. Generally a continuance will be sufficient to avoid any prejudice. Appellant made no motion for continuance. Thus the issue is deemed waived. *Owens* v. *State, supra.*

Appellant next claims the trial court erred in not granting his "motion for judgment on the evidence" for the reason that

the State had failed to prove the legal cause of death. Appellant points to the testimony of Danny Parker that Hendricks appeared to have been "stoned" on marijuana when he returned to his residence as raising a question of whether he died of gunshot wound or as a result of the use of drugs. The physician who performed the autopsy on the decedent Hendricks died several months prior to trial and his testimony had not been preserved. However, it is not an absolute requirement that the cause of death be established by medical testimony. See *Covington* v. *State*, (1975) 262 Ind. 636, 322 N.E.2d 705, 45 Ind. Dec. 576. Although no physician testified as to the cause of death there was ample testimony from which the jury could conclude beyond a reasonable doubt that decedent died as a result of a gunshot wound. Miss Bowers testified from her medical training that she knew decedent had been shot in the brain when he began jerking and convulsing. Officer Christ, who had witnessed the autopsy of Hendricks, testified that he had observed the entrance wound of the bullet, had seen the path of the bullet through decedent's brain and had seen the doctor recover a bullet from the brain of the decedent. Appellant cites *Hall* v. *State*, (1928) 199 Ind. 592, 159 N.E. 420 for the proposition that where a wound is not mortal and death results from an independent cause the person inflicting the wound is not responsible for the death. That case is inapplicable to the case at bar. Here there was ample evidence from which the jury could determine that the wound was in fact mortal and that death resulted almost immediately therefrom. The trial court did not err in overruling appellant's motion.

Appellant next claims the trial court erred in allowing the State to cross examine James Highbaugh, a witness for the appellant, as to a conversation Highbaugh had with one J. T. Jackson. During direct examination by appellant's attorney, Officer James Highbaugh of the Indianapolis Police Department responded to questions as follows:

"Q. Do you recall your [telephone] conversation with him [appellant]?

"A. Well, I informed him as to what the charge, what I had found out about as far as there had been a warrant on file for him, and tried to make some sort of arrangements that we could get him into the office and if he was the one involved alright; if he wasn't, it was best for him to talk to the people about it.

"Q. Do you recall what his response was?

"A. Yes. He wanted to meet me at his sister's house, it was sometime in the afternoon of the next day I believe, and when I arrived there well there were two other fellas there instead of George, and I had a long conversation with these fellas, you know, trying to find out where George was in an attempt to get George in, and they said that they would contact me later, which I never heard anything from that point on until the arrest of George in Elkhart.

"Q. Do you know who those two men were?

"A. I only know one of the subjects by name—it's J. T. Jackson, I believe that is his name, and the other guy, he was from out of town. I believe he was arrested also in Elkhart on some other charges."

On cross examination the following questions, answers, objections and arguments and ruling were made:

"Q. Okay. Do you remember talking to J. T. Jackson?

"A. Yes, sir.

"Q. Any explanation given to you as to why George wasn't there when you made the appointment to see him?

"MR. CHAMPION: Unless Mr. Hudson was there or unless Mr. Jackson is here and can explain what things, what statements he made and why he made them, I'm afforded no opportunity to cross examine those statements, so for that reason I would object.

"MR. MILLEN: Your Honor, I think the defendant opened the door here. He has solicited portions of the conversation. Now I think I am entitled to go into the entire conversation.

"THE COURT: Overruled. You may proceed.

"Q. Do you remember the question?

"A. Yes, sir. As far as my conversation between Jackson and the other fella?

"Q. Yes, sir.

"A. It was mainly trying to give them enough—they actually didn't know me. Now George did, but they was, uh, it was trying to more or less let them know that I was more or less okay, I wasn't trying to get George all, you know,

screwed up or anything like that. But just more or less trying to get him into the station, you know, before anything would happen. If he was involved, okay; if he wasn't, it'd be better off if he came in.

"Q. But you had made the appointment with George to be there that day?

"A. Yes, sir, I had.

"Q. They didn't tell you why he wasn't there then?

"A. Not directly. The impression that I got was lack of trust from those two. Like I said, I didn't know that much about either of those fellas and they didn't know me. But it seemed like they didn't trust me from what I was talking about to them."

Although the question itself did not require a hearsay answer the State's response to the objection indicates that hearsay was invited. The testimony of Officer Highbaugh as to the statements made to him by Jackson as to why appellant did not appear would have been hearsay. *Patterson* v. *State*, (1975) 263 Ind. 55, 324 N.E.2d 482, 46 Ind. Dec. 158. However, the eventual answer was that no reason was given—a response that clearly injected no hearsay evidence into the record and could not have been detrimental to the appellant. Thus appellant was not harmed by the court's ruling.

Appellant next urges that the State improperly raised motive for the first time during its rebuttal argument. No objection was presented during the argument but immediately after the argument appellant moved for a mistrial. Appellant's remedy in this regard is set out in IC 35-1-35-1 (Burns 1975), which reads in pertinent part as follows:

"But if the case be not so submitted without argument the prosecuting attorney shall have the opening and closing of the argument; but he shall disclose in the opening all the points relied on in the case and if in the closing he refers to any new point or fact not disclosed in the opening the defendant or his counsel shall have the right of replying thereto, which reply shall close the argument of the case." IC 35-1-35-1 (Burns 1975).

The trial court did not err in denying a mistrial.

Appellant next argues the State failed to establish guilt in two regards: (1) failure to establish the cause of death and (2) misidentification of appellant by Kathy Bowers and Danny Parker. The issue of the cause of death has already been dealt with. The question of misidentification of appellant is based upon conflicting evidence which this Court will not weigh. *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686, 34 Ind. Dec. 684. Miss Bowers and Parker observed appellant for a period of several hours in close proximity, under good lighting conditions. It was for the jury to determine whether to believe either the two survivors or appellant and his sister, who testified that he was at her house at the time in question. From the evidence as previously summarized it can be seen that each material allegation of each charge was supported by evidence so as to permit the submission of the cause to the jury. The trial court did not err in denying appellant's motion for a directed verdict.

Although appellant does not raise the question, this Court, on its own motion, observes that the trial court sentenced appellant on both the charge of rape and armed rape arising out of the same instance. This was error. The lesser crime of rape merged with the charge of armed rape. *Thompson* v. *State*, (1972) 259 Ind. 587, 290 N.E.2d 724, 34 Ind. Dec. 335. Likewise, the trial court held the premeditated murder conviction in abeyance after sentencing appellant to life imprisonment on the felony murder charge arising out of a single incident. The two charges merged. The court could give but one life sentence on these charges.

This cause is therefore remanded with instructions to correct the sentences and the court record accordingly. The trial court is in all other things affirmed.

Arterburn, Hunter and Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 354 N.E.2d 164.