HENRY CLAY WALKER *v.* STATE OF INDIANA.

[No. 2-1275A356. Filed June 7, 1977.]

*Dennis E. Zahn, Symmes, Fleming, Ober & Symmes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *K. Richard Payne,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Defendant-appellant, Henry Clay Walker (Walker), was convicted by jury of violating the Indiana Controlled Substances Act[1] and the Indiana Firearms Act.[2] From the denial of Walker's motion to correct errors this appeal was perfected raising the following issues for our review:

1. Whether the trial court erred in overruling Walker's motion to suppress.
2. Whether the trial court erred in admitting into evidence State's Exhibits No.'s 3 and 4.
3. Whether the trial court erred in denying Walker's petition to be treated as a drug abuser.

The facts necessary for our disposition of this appeal are as follows: On June 6, 1974, at approximately 2:00 P.M., Police Officers Hoover, Zunk, Wurz and Ezell were preparing to execute a search warrant at 4505 North Colony Place, Indianapolis, Indiana. Officer Hoover testified that three (3) controlled heroin buys had been made at this address. Officer Hoover observed Walker enter the apartment about to be searched and leave shortly thereafter. Officer Hoover's informant had told him that Walker was a dealer in drugs. Being unable to stop Walker himself, Officer Hoover radioed Officer Zunk to stop Walker's vehicle.

Officer Zunk, upon receiving Officer Hoover's dispatch, stopped Walker's vehicle. As Walker was getting out of his car, Officer Zunk noticed a gun protruding from under his

1. IC 1971, 35-24.1-1-1 *et seq.* (Burns Code Ed.).
2. IC 1971, 35-23-4.1-3 (Burns Code Ed.).

jacket. Officer Zunk thereupon confiscated the gun and placed Walker under arrest. Following Walkers arrest, a subsequent search of his person revealed six (6) packets containing a white powdery substance later identified as heroin. Officers Wurz and Ezell corroborated this chain of events.

Walker contends that the trial court erred in overruling his pretrial motion to suppress. We do not agree.

At the outset of this opinion we think it important to emphasize that we are not here concerned with the propriety of a police officer making a warrantless arrest based upon probable cause that a felony has been or is being committed. Rather, this case presents to this Court the narrow issue of whether Officer Hoover, and *via* his radio dispatch Officer Zunk, were justified in subjecting Walker to a brief investigatory stop. If the initial stop of Walker's vehicle was proper there can be no doubt that the seizure of Walker's gun which was in plain view as he alighted from his vehicle, and the white powdery substance later identified as heroin, was proper.

IC 1971, 35-3-1-1 (Burns Code Ed.) provides as follows:

". . . When a law enforcement officer in a distinctive uniform, or in plain clothes after having identified himself as a law enforcement officer reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed by any person, observed in a public place said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action. . . ."

However, it is well settled that a police officer need not rely solely upon his personal observations of unusual conduct to stop and briefly detain a person if the circumstances warrant further investigation. See, *Adams* v. *Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (policeman justified in detaining defendant upon tip from reliable informer that

defendant had a gun) ; *Elliot* v. *State* (1974), Ind. App., 309 N.E.2d 454, transfer granted, 262 Ind. 413, 317 N.E.2d 173 (police justified in detaining defendant where he had one conviction and multiple arrests on drug related charges, was in the company of two known drug users, and was exiting from the address where police had received a tip that a drug delivery was to take place).

The test to be applied in determining the constitutionality of investigatory stops such as we have in the case at bar is whether the facts known to the police officer at the time of the stop would be sufficient to warrant a man of reasonable caution in the belief that a further investigation was appropriate. *Adams* v. *State, supra; Williams* v. *State* (1973), Ind. App., 299 N.E.2d 882, transfer granted, 261 Ind. 547, 307 N.E.2d 457.

During the hearing on Walker's motion to suppress Officer Hoover testified that an informant who had given him reliable information in the past had seen narcotics in Walker's home and Walker was involved in the illegal sale of heroin. Officer Hoover further testified that prior to the search warrant being served he observed Walker enter the apartment under surveillance where three (3) controlled narcotics buys had been made in the past.

It is the opinion of this court that Officer Hoover had sufficient facts within his personal knowledge to subject Walker to a brief investigatory stop to inquire about his presence in a known narcotics den. Such being the case, Officer Zunk was justified in rendering his assistance to Officer Hoover.

Walker contends that State's Exhibits No.'s 3 and 4 (lock-seal envelope and narcotics) were improperly admitted into evidence because the State failed to establish a proper chain of custody.

The record discloses that following Walker's arrest Officers Zunk and Wurz discovered six (6) packets of white powder

on Walker. These packets were at all times in their possession until marked, sealed in an envelope, and deposited in the narcotics vault located in the police property room on the evening of Walker's arrest. The following day, June 7, 1974, Officer Ezell took the envelope to Dr. Carl Phillips for testing. When Dr. Phillips was not testing the Exhibit it was kept in a locked cabinet inside the crime laboratory. On October 21, 1974, Dr. Phillips gave the envelope back to Officer Ezell who returned it to the police property room and deposited it in the narcotics vault. On March 31, 1975, Officer Wurz signed State's Exhibits Nos. 3 and 4 out of the police property room to bring to trial. On April 1, 1975, the prosecutor and Dr. Phillips noticed that not all of the alleged narcotics packets had been tested. At this time the Exhibits were in the possession of the court reporter. Dr. Phillips and the prosecutor thereupon took the packets back to the laboratory for further testing. At no time did the packets leave Dr. Phillips' possession and control.

We agree with Walker that the State bears the burden of establishing a proper chain of custody before an exhibit such as we have in the case at bar can properly be admitted into evidence. However, the State need not exclude every remote possibility of tampering. It is only necessary for the State through testimony or records to strongly suggest at all times the whereabouts of an exhibit. *Traylor* v. *State* (1975), 164 Ind. App. 50, 326 N.E.2d 614, and cases cited therein. We are of the opinion that the State's chain of custody was sufficient.

Walker finally contends that the trial court abused its discretion in refusing to sentence him as a drug abuser.[3]

In the case at bar the trial court ordered the Department of Mental Health to determine whether Walker was a drug abuser, and if so, whether he was likely to be rehabilitated. The Department answered both questions in the affirmative.

3.  IC 1971, 16-13-6.1-16 *et seq.* (Burns Supp. 1976).

IC 1971, 16-13-6.1-18 (Burns Supp. 1976), provides, *inter- alia*, as follows:

> "* * *
>
> If the individual elects to undergo treatment or is certified for treatment, the court shall order an examination by the department to determine whether he is a drug abuser and is likely to be rehabilitated through treatment. Within a reasonable time after receiving an order to conduct an examination, the department shall report to the court the results of the examination and recommend whether the individual should be placed on probation and supervision for treatment. *If the court, acting on the report and other information coming to its attention, determines that the individual is not a drug abuser, or is a drug abuser not likely to be rehabilitated through treatment, the court shall proceed to pronounce sentence as in other cases. If the court determines that the individual is a drug abuser and is likely to be rehabilitated through treatment, the court may place him on probation* and under the supervision of the department for treatment and of the proper probation authorities for probation supervision and may require such progress reports on the individual from the probation officer and the department as the court finds necessary. No individual may be placed under supervision unless the department accepts him for treatment.
>
> * * *" (Our emphasis)

The decision to place a defendant on probation under the supervision of the Department of Mental Health is one which rests within the sound discretion of the trial court.

The report submitted to the trial court concerning Walker showed that he had begun participation in a drug program sponsored by the VA during March, 1974. According to the report Walker was detoxified and remained active in drug free therapy. The trial court determined that in light of Walker's drug related arrest on June 6, 1974, after he had entered a drug treatment program, it was unlikely that he could be successfully rehabilitated. In light of these facts we are unable to say that the trial court's determination not to sentence Walker as a drug abuser was an abuse of discretion.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 363 N.E.2d 1026.