ROBERT EUGENE CANDLER *v.* STATE OF INDIANA.

[No. 576S164. Filed June 24, 1977.]

*Joseph D. Bradley,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Lesly A. Bowers,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant Robert Eugene Candler was convicted after trial by jury of first degree murder, Ind. Code § 35-13-4-1 (Burns 1975) and commission of a felony (robbery) while armed, Ind. Code § 35-12-1-1 (Burns 1975). He was sentenced to consecutive terms of life imprisonment for the murder and fifteen years for the armed robbery. On appeal appellant raises numerous issues, which we have consolidated as follows:

(1) whether the trial court erred in refusing either to dismiss count II of the information because of prejudicial surplusage, or to strike such surplusage;

(2) whether appellant was entitled to reserve his opening statement until the close of the State's case-in-chief;

(3) whether testimony by a police officer concerning the finding of a wallet during a search of appellant's automobile should have been excluded as the product of an unlawful search;

(4) whether two guns and a shotgun shell were improperly admitted due to an inadequate chain of custody;

(5) whether the trial court's instructions on reasonable doubt invaded the province of the jury;

(6) whether the trial court erred in refusing to instruct the jury that robbery was a lesser included offense of first degree (felony) murder;

(7) whether appellant could properly be sentenced for both first degree (felony) murder and commission of a felony while armed, when both convictions were based upon the same robbery;

(8) whether the evidence was sufficient to support each verdict.

On the night of November 20, 1974, appellant and two companions robbed the J & H Tavern and appellant fatally wounded a customer with a shotgun blast to the chest.

## I.

Appellant was charged by an information in two counts, reading as follows:

### "COUNT I

ELMER CHIKAR, upon information received by him, says:

That on or about the 19th day of November, 1974, at and in the County of St. Joseph, State of Indiana, one ROBERT EUGENE CANDLER did unlawfully and feloniously kill and [murder] one JOHN F. BRITTON, while engaged in an [armed] robbery, by [unlawfully and feloniously] robbing the J & H. Tavern and the customers therein, [and while engaged in this armed robbery, did unlawfully and feloniously kill and murder JOHN F. BRITTON by unlawfully and feloniously] shooting JOHN F. BRITTON with a shotgun containing pellets and powder whereby JOHN F. BRITTON died as a result of the wound inflicted by said shotgun, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana.

The above acts were committed in violation of Burns Indiana Statutes, Section 10-3401, I.C. 35-13-4-1.

### COUNT II

ELMER CHIKAR, upon information received by him, says:

That on or about the 19th day of November, 1974, at and in the County of St. Joseph, State of Indiana, one ROBERT EUGENE CANDLER did unlawfully, feloniously and forcibly, by violence and putting ANITA WROBLEWSKI in fear, take, rob and steal from the person and possession of ANITA WROBLEWSKI, lawful United States currency of the approximate amount of One Hundred Thirty ($130.00) Dollars, belonging to one Helen Elliot, dba the J & H Tavern, 59400 Crumstown Highway, North Liberty, County and State aforesaid, and the said ROBERT EUGENE CANDLER being a person over the age of sixteen (16) years did commit the crime of robbery as aforesaid while armed with a certain firearm, to-wit: a 12 gauge shotgun, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana.

The above acts were committed in violation of Burns Indiana Statutes, Section 10-4709, I.C. 35-12-1-1." (Caption,

signatures, and jurat omitted. Words in brackets are those ordered stricken by trial court.)

Before trial appellant filed a written motion to dismiss the information for the reason that it failed to comply with Ind. Code § 35-3.1-1-2(a)(4) (Burns 1975) which provides that an indictment or information shall allege an offense by "setting forth the nature and elements of the crimes charged in plain and concise language without unnecessary repetition. . . ." The accompanying memorandum objected to various words and phrases in each count as being repetitious and inflammatory. The trial court did not dismiss either count, but ordered stricken the words in Count I enclosed in brackets. Nothing was stricken from Count II, although the words "unlawfully and feloniously and forcibly", "fear", and "rob and steal" and "contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana" in that count were challenged. All of the language objected to in Count I was stricken.

Appellant argues that Count II was defective, and that he was prejudiced by the reading of its unnecessary and inflammatory language to the jury. He does not contend that the trial court's action in striking the offending language from Count I rather than dismissing that count was improper, but urges that the trial court should have either dismissed Count II or stricken the challenged language therefrom. The State replies that the trial court need do neither unless the verbage complained of substantially prejudices the accused. We will first consider whether Count I should have been dismissed.

Section 35-3.1-1-2(a)(4) requires criminal charges to set out "the nature and elements of the crimes charged in plain and concise language without unnecessary repetition." Subsection (d) states that the charge "shall be a plain, concise and definite written statement of the essential facts of the crime charged" which "need not contain a formal commencement, a formal conclusion, or any other matter not necessary to such statement." Since the adoption of code pleading in

Indiana in 1852, our successive statutes have essentially required the pleading of crimes "in plain and concise language." See II Rev. Stat. [1852] 367; Ch. 36, § 157 [1881] Ind. Acts 144; Ch. 169, § 169 [1905] Ind. Acts 584. The purpose of these statutes was to abolish common law pleading requirements[1] and permit offenses to be charged either in the words of the penal statute or in straightforward equivalent language. In *Doss* v. *State,* (1971) 256 Ind. 174, 267 N.E.2d 385, this Court considered the effect of the inclusion of unnecessary common law phrases, "unlawfully, feloniously, and burglariously," in an affidavit for burglary. We recognized these words as surplusage but found that they were not sufficiently prejudicial to the accused to render the affidavit defective. We relied on a statute since repealed, which provided:

> "No indictment or affidavit shall be deemed invalid. . . .
>
> \* \* \*
>
> Sixth. For any surplusage or repugnant allegation, where there is sufficient matter alleged to indicate the crime and person charged."

Chapter 169, § 192 [1905] Ind. Acts 584, repealed July 26, 1973, formerly compiled at Ind. Ann. Stat. § 9-1127 (Burns 1956). In place of this statute the Legislature enacted Ind.

---

1. At common law specific phraseology was essential to the validity of a criminal pleading. All indictments for felonies were required to aver the "felonious" performance of an act. Burglaries were to be pleaded "burglariously"; "murdered" and "ravished" had to be employed in murder and rape charges rather than "killed" or "raped." 4 W. Blackstone, Commentaries 879 (Browne Abr. Ed. 1892).

At common law an averment of a breach of the king's peace was considered necessary to every criminal charge. R. Perkins, Criminal Law 399 (2d Ed. 1969). "All offences are either against the king's peace or his crown and dignity, and are so laid in every indictment." 1 W. Blackstone, Commentaries 120 (Browne Abr. Ed. 1892). This appears to be the origin of the custom and former requirement that indictments conclude "against the form of the statute," *Fuller* v. *State,* (1820) 1 Blackford 63, and "against the peace and dignity of the State of Indiana," *Hall* v. *State,* (1857) 8 Ind. 439. This and other common law requirements were expressly abrogated in 1852 by statute. II Rev. Stat. [1852] 368; Ch. 36, § 181 [1881] Ind. Acts 148; Ch. 169, § 192 [1905] Ind. Acts 626. Notwithstanding, the 1956 edition of Ewbanks' Indiana Criminal Law still recommended that criminal charges conclude with that phrase. I Ewbanks Criminal Law § 168 at 87 (Symmes Ed. 1956).

Code § 35-3.1-1-5 (Burns 1975), subsection (a) (3) of which provides:

"An indictment or information which charges the commission of a crime shall not be dismissed but may be amended on motion by the prosecutor at any time because of any immaterial defect, including:

\* \* \*

(3) The presence or absence of any unnecessary or repugnant allegation. . . ."

This section remedies a deficiency of prior law by allowing immaterial defects to be corrected by amendment, but does not require such correction. The comments to this section by its drafters, the Indiana Criminal Law Study Commission, indicate that it was not intended to alter the prior "surplusage or repugnant allegation" statute. Proposed Indiana Code of Criminal Procedure, Comment to § 35-3.1-1-7 (Final Draft, 1972) (§ 35-3.1-1-7 was enacted as Ind. Code § 35-3.1-1-5). Therefore under *Doss* the trial court's refusal to dismiss Count II was erroneous only if the language complained of was "manifestly detrimental" to appellant. 256 Ind. at 179, 267 N.E.2d at 388. The language challenged here is not greatly different from that in *Doss*. While it may be doubted whether the use of these archaic terms accords with the spirit of the statutes in effect these past one hundred years concerning criminal charging, that does not necessarily render them prejudicial to the accused. Appellant contends that the challenged language threatened to inflame the jury by rhetorical excess. The formal, stilted, and archaic expressions of Count II do not appear to us, however, to be capable of producing strong emotional reaction among the jurors such as to threaten their impartiality. The trial court did not err in refusing to dismiss Count II.

Nor did the court err in refusing to strike the language in question. While there is no explicit statutory authority for a motion to strike surplusage from an information, such a procedure was approved by this Court in *Torphy* v. *State*, (1918) 187 Ind. 73, 118 N.E. 355. We held that "such allegations as

serve only to prejudice the defendant without aiding or contributing to the statement of offense charged" should be stricken on motion. 187 Ind. at 75-76, 118 N.E. at 356. In *Torphy* the indictment alleged a previous conviction of the defendant, which was not an element of the offense charged. This Court has often held that exposure of the jury to evidence of other offenses committed by the accused is improper because of the prejudicial effect of such evidence. *Stevens* v. *State,* (1976) 265 Ind. 396, 354 N.E.2d 727, 734, and cases cited. *Torphy* relied on such a holding, *Rock* v. *State,* (1916) 185 Ind. 51, 110 N.E. 212. The language complained of in Count II pales in comparison with revelation of a prior conviction, as explained above. The trial court did not err in failing to strike that language.

## II.

Appellant requested leave of the trial court to reserve his opening statement until the close of the State's case-in-chief. The trial court refused the request, and appellant made no opening statement. Appellant argues that the statute regulating the order of proceedings in criminal trials, Ind. Code § 35-1-35-1 (Burns 1975) allows the defendant to elect to address his opening statement to the jury after hearing the State's evidence. We determined in *Buise* v. *State,* (1972) 258 Ind. 321, 281 N.E.2d 93, that the statute does not allow a defendant to do so. Appellant contends, however, that this construction of the statute compelled him to decide before hearing the State's case what his defenses would be, and whether he would testify in his own behalf. Were this true, the statute might violate constitutional guarantees. See *Brooks* v. *Tennessee,* (1972) 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358; *Herring* v. *New York,* (1975) 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593. It is not true. Appellant was not required to decide what testimony or evidence, if any, he would offer until the close of the State's evidence. He was merely required to make his opening statement, if he desired to make one, at the opening of trial. The

degree to which he discloses his defenses and trial strategy in that statement is left to his own choosing. Some tactical advantage might accrue to the accused were he allowed to reserve his opening statement, but denial of this advantage does not invalidate the statute.

## III.

At trial Trooper Galloway of the Indiana State Police testified that a day after the robbery he found a wallet taken in the robbery in an automobile driven by appellant. On appeal appellant argues that this wallet was illegally seized in violation of his Fourth Amendment rights. The State contends that the issue has been waived by appellant's failure to object to the reception of evidence concerning the wallet's finding. The wallet was admitted upon the identifying testimony of its owner, without objection. The State then called Trooper Galloway to describe the circumstances under which it was found. The officer testified that he found appellant sitting in a Buick convertible which had been stopped by another trooper. He was asked:

"Q. Did you eventually find anything in his car?

> MR. LUBER: To which we will object. There has been no showing that this stopping was in any way legitimate by warrant or otherwise, and any search resulting from that stop would be inadmissible.

THE COURT: Sustained.

Q. What was the reason Trooper Hixenbaugh stopped the car while you were there?

A. Earlier in the evening District Twelve gave us a dispatch to be on a lookout for a blue—I believe it was a '71 Buick convertible driven by Mr. Candler, and the vehicle was spotted and stopped by Trooper Hixenbaugh.

Q. I will hand you what has been identified as State's Exhibit Number Eight. Do you want to take a look at that please? Can you identify that?

A. Yes.

Q. What is that?

MR. LUBER: I will object.

(And now the following conversation was had outside the hearing of the jury.)

MR. LUBER: I will object to any testimony concerning the truth of any search that had taken place. They failed to establish a proper foundation for the admission of any items—

THE COURT: Failed to what?

MR. LUBER: Establish a proper foundation for the admission of any items that were taken from either Mr. Candler's person or from the vehicle in which he was driving. He can only testify that there was a dispatch to stop that car. There has been no establishment that there was probable cause to believe that a felony had been committed, and if he was involved in it that any warrant had issued giving him a right to stop a car or that any traffic violation had been committed, nor has there been any showing that there was a waiver of any rights to a search made by Mr. Candler. Not only that, it wasn't this officer who did the stopping. According to him, it was Officer Hexinbaugh [sic].

MR. CHAPLEAU: He was there at the time. This wallet already is in evidence. He can testify when he saw it last.

THE COURT: I am not sure about that. Objection sustained.

(And now the following proceedings were had within the hearing of the jury.)

Q. Now, do you know why Mr. Candler was stopped in that car?

A. He was a suspect in a shooting, and armed robbery, at the Crumstown tavern.

Q. Did you have this information when Trooper Hixenbaugh stopped him?

A. Yes.

Q. Did you look in his automobile?

A. Yes.

Q. And did you see anything in plain view in his automobile?

A. This wallet was in plain view.

Q. Where was it?

A. The vehicle was a convertible and there was a space or a small ledge between the top of the windshield and the convertible top, and it was lying up there, it was placed up there.

Q. And you took the wallet?

A. Yes.

Q. What did you do with it?

A. I opened it up and I saw a card belonging to a Mr. Kroll who I knew was one of the victims in the tavern."

It appears from the record that appellant objected twice when the State attempted to elicit the facts surrounding the finding of the wallet, but refrained from objecting the third time such a question was posed, following the "plain view" testimony. By this point appellant had clearly expressed his objection to the testimony describing the finding of Mr. Kroll's wallet in appellant's automobile and the grounds for that objection, namely, the illegality of the search. That the State understood the objection and grounds is evidenced by the State's production of evidence to justify the search and seizure. That the trial court so understood is equally apparent. The purpose of the requirement of a timely objection is to alert the court to alleged errors so as to permit their prevention or immediate correction without waste of time and effort, *Horton* v. *State*, (1976) 265 Ind. 393, 354 N.E.2d 242, and to give notice of the issue to the opposing party to allow the full litigation of the issue in the trial court. *Hammer* v. *State*, (1976) 265 Ind. 311, 354 N.E. 2d 170. When these purposes are fulfilled, the objection is adequate.

The admissibility of evidence resulting from a challenged search or seizure may be made either by pre-trial motion to suppress or in-trial objection or motion to strike. *Riddle* v. *State*, (1971) 257 Ind. 501, 275 N.E.2d 788. When a search or seizure is conducted without the authority of a warrant, the State bears the burden of showing that its actions were authorized by one of the exceptions to the warrant requirement. *Elliott* v. *State*, (1974) 262 Ind. 413,

317 N.E.2d 173; *Ludlow* v. *State,* (1974) 262 Ind. 266, 314 N.E.2d 750; *Johnson* v. *State,* (1974) 262 Ind. 183, 313 N.E.2d 542; *Smith* v. *State,* (1971) 256 Ind. 603, 271 N.E.2d 133; *State* v. *Smithers,* (1971) 256 Ind. 512, 269 N.E.2d 874.

Here there were two distinct "seizures": The initial stop of the automobile, and Trooper Galloway's retrieval of the wallet. The State seeks to justify the former on the basis of the "lookout dispatch." There was no showing of any specific facts within the knowledge of either Trooper Galloway or Trooper Hixenbaugh which would have warranted either in believing that a crime had been committed or that appellant's Buick contained evidence of that crime; therefore probable cause for the stop was not shown. Nor was any other justification for the stop advanced.

Seizure of the wallet was sought to be justified by the "plain view" doctrine; the wallet was in the officer's view as he stood outside the car. This justification fails on two grounds. The "plain view" doctrine does not apply to objects the view of which is made possible by an illegal stop. Moreover, it was not until Trooper Galloway opened the wallet and found Mr. Kroll's card that he had any reason to believe that the wallet belonged to a robbery victim, rather than to appellant or some other person. Removal of the wallet from the automobile was a seizure requiring probable cause or other legal justification, and a search or seizure cannot be justified by its result. *Ferry* v. *State,* (1970) 255 Ind. 27, 262 N.E.2d 523; *Ashley* v. *State,* (1968) 251 Ind. 359, 241 N.E.2d 264. See *Nicholas* v. *State,* (Tex. Crim. App. 1973) 502 S.W.2d 169, 172. The trial court erred in permitting testimony concerning the discovery of the wallet in appellant's automobile.

However, error in the admission of evidence wrongfully obtained in violation of the right of the accused to be free from unreasonable searches and seizures is harmless, and will not result in reversal, if such evidence made no contribution to the verdict. *Mitchell* v. *State,*

(1972) 259 Ind. 418, 287 N.E.2d 860; *United States* v. *Murray*, (9th Cir. 1976) 530 F.2d 856; *United States* v. *West*, (6th Cir. 1973) 486 F.2d 468.[2] Appellant was identified as the killer of John Britton by three of the robbery victims and one of his accomplices. He also confessed his guilt in a statement made to the investigating officers. The discovery of the wallet in appellant's automobile constitutes evidence cumulative in the extreme, and therefore the admission of this evidence was harmless beyond a reasonable doubt.

## IV.

Appellant objects to the introduction of two weapons found in the trunk of an automobile by the State Police. One of the detectives finding the weapons testified that they had remained in his possession from November 21, 1974, when he found them, until trial, and that they were in substantially the same condition as when found. Appellant complains that the evidence tags attached to the weapons by the detective read "11/22/74," and that the chain of custody was therefore defective.

Appellant quotes our decision in *Graham* v. *State*, (1970) 253 Ind. 525, 255 N.E.2d 652, wherein we said:

> "Under such circumstances as these it is necessary to establish a complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian. If one link of the chain is *entirely* missing, the exhibit cannot be introduced. . . ." 253 Ind. at 530, 255 N.E.2d at 654.

Even assuming that *Graham*, a case in which the evidence involved was heroin, "fungible in nature and similar in form to substances familiar to people in their daily lives," 253 Ind. at 531, 255 N.E.2d at 655, applies with full force to the facts of this case, cf. *Coleman* v. *State*, (1975) 264 Ind. 64, 339 N.E.2d 51, an adequate chain of cus-

---

2. The United States Supreme Court held that errors violating the Fourth Amendment could be subject to the harmless error doctrine in *Chambers* v. *Maroney*, (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

tody was established. No link of the chain was even partially missing. The detective testified that the guns were in his possession from the date of their finding until trial, and that he had erroneously marked the evidence tags attached to them "11/22/74" instead of "11/21/74." This established "the possession of the exact and original exhibit to the final custodian." *Graham, supra.* Moreover, although not necessary to our decision, we note that a photograph of the guns *in situ,* as found in the automobile trunk, was also admitted into evidence. Since the purpose of the chain of custody requirement is to minimize the danger of "tampering, loss, or mistake with respect to an exhibit," *Graham, supra,* the availability of a photograph showing the evidence in its original condition, which the trier of fact can compare with evidence as introduced, would also aid in establishing a chain of custody.

Appellant objects to the admission of a twelve gauge Remington shotgun shell casing, found at the J & H Tavern during the investigation of the shooting. Appellant's argument intertwines two distinct objections which we shall treat separately.

Appellant first contends that no proper chain of custody was established because no markings were placed on the shell casing itself. The most highly relevant aspect of the shell was its gauge, as other evidence placed appellant in the tavern holding a twelve gauge shotgun. We deal here with but a single shell. It is of common type, carrying no individually distinctive marks or characteristics. It is small in size and can be held in the hand; it could easily be mixed up with similar shell casings during handling, especially in police stations and property rooms where such items are routinely to be found. Because of its common nature, the absence of any distinctive mark on it, and the purpose for which the prosecutor sought to introduce it, the chain of custody rule must apply with the same force to the admission of this casing as has been determined appropriate in the admission of heroin and currency. *Graham* v. *State, supra; Martin* v. *State,* (1974) 262 Ind. 232, 314 N.E.2d 60.

This shell casing was placed in a plastic bag by the officer who obtained it at the crime scene, the plastic bag was tagged, and the bag was locked in the detective bureau property room. Testimony of the same officer showed that he removed it at a later date and delivered it to a laboratory for testing, and that the lab technician put a mark on the casing. The testimony of the officer showed that the property room was not attended by a custodian. A key was available in the bureau to the officers of it. There is no testimony that the bag containing the shell was sealed or even closed while in the property room, or that the bag and shell remained locked in the room from the time it was first placed there and up to the time it was removed for testing. The foundation for the admission of the exhibit on the basis of a chain of custody was insufficient.

However in light of the circumstances the erroneous admission of this evidence was harmless. The shell casing served here to corroborate the testimony of one of appellant's accomplices, the waitress from the tavern, and the statement of appellant himself, that appellant indeed did, fire the fatal shot in the course of the robbery. This testimony was direct and the corroborative support provided it by the casing was not an important factor in the acceptance of it by the jury. Therefore the substantial rights of appellant were not prejudiced by its erroneous reception. *Harvey* v. *State,* (1971) 256 Ind. 473, 269 N.E.2d 759.

Appellant also argues that admission of the shell violated the "well established law that a foundation must be laid connecting the evidence with the defendant before it is admissible at trial," quoting *Rose* v. *State,* (1972) 258 Ind. 377, 380, 281 N.E.2d 486, 488. *Rose* is a chain of custody case which considered whether a sufficient chain was established to allow the admission of several bags of marijuana; it explained that the chain of custody requirement is a form of relevancy foundation which establishes that the evidence introduced at trial is the same evidence originally gathered. See *Graham* v. *State, supra* at 531. *Rose* did not

purport to establish the degree of logical connection with the accused ("foundation") an item of evidence must possess to satisfy the evidentiary requirement of relevancy. It is not true that only evidence which can be proved positively to have been in the possession of the accused is admissible. *Coleman* v. *State,* (1975) 264 Ind. 64, 339 N.E.2d 51. Any evidence having even a slight tendency to prove a material fact is sufficiently relevant to be admitted. *Musick* v. *State,* (1976) 265 Ind. 207, 352 N.E.2d 717, 719; *Pirtle* v. *State,* (1975) 263 Ind. 16, 34, 323 N.E.2d 634, 643. The shotgun shell found at the tavern tends to prove that a shotgun was fired there. This fact supports the allegation in the information that appellant shot John Britton at the J & H Tavern with a twelve gauge shotgun. The shell constituted a small link in the chain of evidence connecting appellant with the murder of John Britton, but it was nonetheless a legitimate link. See *Swininger* v. *State,* (1976) 265 Ind. 136, 352 N.E.2d 473, 476. There was no error in admission of the shell on this basis.

## V.

The trial court gave the jury an instruction explaining the presumption of innocence and reasonable doubt both as a preliminary and final instruction. Appellant objects that this instruction usurped the power of the jury to determine the law. IND. CONST. Art. 1, § 19. He does not argue that the instruction misstates the law. Appellant cites *Pritchard* v. *State,* (1967) 248 Ind. 566, 230 N.E.2d 416, as authority for his position. *Pritchard* condemned a "mandatory instruction," one which directed the jury to convict the defendant if it found certain facts to be true. We do not have such an instruction here.

It is the province of the trial court to explain the law to the jury. *Burris* v. *State,* (1941) 218 Ind. 601, 34 N.E.2d 928. The jury has the power, but not the right, to substitute its own conception of the law for the court's instructions. *Beavers* v. *State,* (1957) 236 Ind. 549, 141 N.E.2d 118. The

trial court did not violate Article 1, § 19, of the Indiana Constitution.

## VI.

Appellant objected to the trial court's final instruction defining lesser included offenses and tendered an instruction that robbery was a lesser included offense of first degree murder as charged in Count I of the information (felony murder in the commission of a robbery). The instruction tendered by appellant was refused by the court. The court instructed on the offense of theft from the person as included in the armed robbery charge. The language of the court's instructions implies that felony murder has no lesser included offenses. Appellant argues that robbery is an offense necessarily included in a charge of felony murder during the commission of a robbery, since the elements of robbery must be proven to support the murder conviction.

This Court considered a claim essentially identical to appellant's in *Hester* v. *State*, (1974) 262 Ind. 284, 315 N.E.2d 351 (DeBruler, J., dissenting). A majority of the Court held that where the evidence adduced at trial suggested that the defendant was either guilty of felony murder, as charged, or not guilty by reason of insanity, an instruction that robbery was a lesser included offense was not required. This issue in the present case is controlled by the holding in *Hester*.

## VII.

Appellant received a sentence of life imprisonment for the murder conviction and a sentence of imprisonment for a determinate term of fifteen years for the armed robbery conviction. He contends that the dual sentencing is illegal because armed robbery is a lesser included offense of felony murder. The reasoning of the last section would also prevent us from holding that armed robbery is a lesser included offense of felony murder.

There is, however, a separate but related rule dealing with penalties for offenses arising from the same operative facts but yet not included one within the other.

> "[B]efore the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct." *Thompson* v. *State*, (1972) 259 Ind. 587, 290 N.E.2d 724, 727; *Hudson* v. *State*, (1976) 265 Ind. 302, 354 N.E.2d 164, 170.

In *Coleman* v. *State, supra*, we held that separate sentences could not be imposed for kidnapping and armed kidnapping, because *inter alia*, both offenses are based on the same kidnapping. In *Hudson, supra*, we applied this rule to rape and armed rape. In *Swiniger* v. *State, supra*, we held that an armed robbery sentence merged into the life sentence imposed for the offense of inflicting injury in the commission of a robbery, when the injury was inflicted during the same robbery for which defendant was convicted of armed robbery. See also *Bobbitt* v. *State*, (1977) 266 Ind. 164, 361 N.E.2d 1193; *Roberts* v. *State*, (1977) 266 Ind. 72, 360 N.E.2d 825.

The logical extension of the rationale of these cases is that an armed robbery conviction merges in a felony murder conviction when the felony murder consists of a killing in the commission of the armed robbery. The trial court erred in imposing the fifteen year determinate sentence upon the armed robbery conviction and that sentence must be vacated.

## VIII.

Finally, appellant challenges the sufficiency of the evidence of his guilt in general and of his sanity. This argument has no merit. The evidence of appellant's guilt is overwhelming. Four of the robbery victims described the crime and identified appellant, as did his two accomplices. A confession, the voluntariness of which is not challenged, admitted the robbery and shooting. The weapons used in the robbery were re-

covered in the place indicated by appellant's confession. Appellant in his trial testimony disclaimed any recollection of the robbery and shooting, but admitted planning the robbery and stealing the guns used.

Appellant cites decisions holding that evidence which merely establishes a suspicion of guilt, or proves an opportunity to commit a crime, is not sufficient to support a conviction. While these are valid statements of the law, they have no applicability to the facts of this case, where every element of the offenses charged was supported by direct, uncontradicted evidence. Appellant urges that the testimony of the victims was inconsistent and unreliable because they had been drinking. We are directed to no inconsistencies and find none beyond minor discrepancies in the description of appellant, which can easily be attributed to the difficulty of verbally expressing physical appearance. A rule rendering the testimony of a witness who has been drinking necessarily unreliable would be unjustified because the effect of intoxication on human perception varies with the degree of intoxication and the individual characteristics of the drinker.

Appellant urges that since both of appellant's accomplices testified pursuant to a plea bargain by which they escaped prosecution for the murder, each had a vested interest in giving testimony favorable to the State. The bias of the accomplices is a factor which may be considered by the jury as impeaching the accomplices' testimony, but again, the degree to which their credibility is affected is for the jury to determine. *Coleman* v. *State, supra,* and cases cited.

Although both of the court's psychiatric expert witnesses offered opinions that appellant was not insane within the legal meaning of the term, appellant argues that evidence of appellant's "strange conduct and mental problems" and of his consumption of beer and wine prior to the robbery preclude the jury from finding him to have been legally sane at the time of the offenses. Even had

the jury believed appellant was suffering from emotional or psychological disorders, they could still have properly found appellant guilty.

"Many people who commit crimes have emotional problems and behave abnormally. The very fact that a person commits a violent crime indicates that he has difficulty functioning normally in society. But to be relieved of criminal responsibility for his acts, a person must meet the legal standard of insanity." *James* v. *State,* (1976) 265 Ind. 384, 354 N.E.2d 236, 242.

We find that there was sufficient evidence both that appellant committed the offenses charged and that he was legally sane at the time.

The case is remanded to the trial court with instructions to vacate the sentence imposed upon the verdict entered upon Count II, armed robbery. The conviction upon Count I, first degree murder, is affirmed.

Prentice and Pivarnik, JJ., concur; Givan, C.J., concurs in result with opinion in which Hunter, J., concurs.

## CONCURRING OPINION

GIVAN, C.J.—I feel compelled to write a concurring opinion in this case because of the dicta contained in the opinion. Although the majority opinion holds the admission of evidence seized at the time of appellant's arrest to be harmless error, the majority opinion nevertheless contains several pages of unnecessary dicta wherein it is stated that police officers unlawfully removed a wallet from appellant's car at the time he was arrested. It is abundantly clear from the evidence set out in the majority opinion that the police officers had probable cause to arrest the appellant and to search his automobile. The dictum contained in the majority opinion on this subject is completely contrary to the existing law in Indiana and very well might be misleading to persons reading this opinion in the future.

The same is true of the manner in which the majority opinion handles the introduction of a shotgun shell into evi-

dence. Although the majority eventually holds that it was proper to introduce the shotgun shell in evidence, that holding is preceded in the opinion by erroneous dictum stating that the chain of custody of the exhibit was insufficient. The evidence as recited by the majority opinion establishes abundantly, under the existing case law in Indiana, that there was in fact a proper chain of custody in this case.

HUNTER, J., concurs.

NOTE.—Reported at 363 N.E.2d 1233.