SAM JAMES, JR. *v.* STATE OF INDIANA.

[No. 1275S384. Filed September 22, 1976.]

Anthony V. Luber, of South Bend, for appellant.

Theodore L. Sendak, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, for appellee.

DeBRULER, J.—Defendant-appellant, Sam James, Jr., was convicted of first degree murder, Ind. Code § 35-13-4-1, after a trial by jury, and was sentenced to life imprisonment. He claims that the trial court erred in six respects:

(1) The trial court admitted over objection State's exhibit 1, a photograph of the victim's body.

(2) The trial court gave State's Instruction No. 3, defining the elements of the offense of first degree murder.

(3) The trial court gave State's Instruction No. 5, concerning the jury's consideration of the evidence.

(4) The trial court gave State's Instruction No. 6, charging the jurors that they might consider flight as a circumstance showing guilt.

(5) The trial court gave State's Instruction No. 8 concerning the availability of voluntary intoxication as a defense.

(6) The verdict is alleged to be unsupported by sufficient evidence of premeditation and sanity.

The evidence received by the jury upon which it might reasonably have relied in reaching its verdict disclosed that appellant was married to the victim Connie James and lived

with her and their children. He had been a security guard for Notre Dame University, but on November 3, 1973, he argued with his supervisor and was first fired, then reinstated on a probationary basis. Around this time appellant and his wife had arguments concerning appellant's adequacy as a provider and his wife's intention to work.

On the evening of November 6, 1973, appellant and his wife were in their bedroom arguing; their eighteen year old daughter Patti was also present in the room. He had a gun in a holster on the bed. After his wife agreed with appellant's assertion that they no longer loved each other, appellant drew the gun. Patti tried to hold appellant, heard a shot, and saw her mother fall with blood on her. Appellant's son Sam, fourteen, had shortly before heard appellant threaten to shoot his wife if she would not "hold still." Sam heard the gunshot and heard appellant first tell Patti that the victim had only fainted, then say "She's really dead."

After the shooting appellant took his gun, such money as he could find around the house, and left. He told Floyd Ebersole, a friend, that he had done "something bad;" he had accidentally shot his wife. He asked Ebersole to "give him a half-hour to run" before notifying the police. Appellant appeared at the home of another friend, Robert Kinas, and told Kinas that Patti had shot her mother. He asked to trade guns with Kinas.

Appellant was arrested on November 7, 1973, in Crittenden County, Arkansas, by the local sheriff. He told the sheriff, after being warned of his rights, that his gun had gone off during a scuffle with his wife, shooting her, and that he had disposed of the gun in a river.

Appellant was returned to St. Joseph County where he plead not guilty to an indictment for first degree murder and raised the defense of insanity. At trial several family friends and the family's pastor testified as to factors tending to show that appellant was under stress, was taking various medications, and was acting "out of the ordinary." Father Maley,

the pastor, had suggested that appellant see a psychiatrist, on the day of the shooting.

Two practicing psychiatrists, Doctor Urruti and Doctor Harris, were appointed by the court to examine appellant. Dr. Urruti testified that the version of the episode related by appellant would lead him to believe that appellant acted in an "alcoholic blackout," a physiological condition caused by chronic alcoholism in which appellant could have acted without being consciously aware of his actions. Dr. Urruti testified that this condition was not exacerbated by emotional stress. Dr. Urruti did not find appellant to be otherwise suffering from any mental disease or defect. Dr. Harris did not find appellant to be subject to any mental disease or defect which resulted in "his lacking substantial capacity to either appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at that time." The jury returned a verdict of guilty to the indictment.

Appellant first contends that State's exhibit 1, a single black and white photograph of the victim's body, showing blood on her neck and clothing, should not have been admitted because "the gruesome nature of the picture was calculated to arouse the passions of the jury against the accused and served no other legitimate purpose."

We do not agree. In *Patterson* v. *State*, (1975) 263 Ind. 55, 324 N.E.2d 482, we recognized that:

"[c]onsiderable latitude is permitted to the trial judge in determining the admissibility of such evidence when a fair conflict appears between the State's right to present relevant evidence and the defendant's right to be protected from prejudice likely to be engendered from morbid and shocking displays." 324 N.E.2d at 486.

Here, as in *Patterson*, the photograph was "relevant and competent . . . to assist the jurors in orienting themselves and understanding the evidence." *Id.* The photograph showed the identity of the victim, the location of the wound, and the position of her body. It was therefore useful to the jury notwithstanding the existence of verbal testimony on the same points.

Appellant urges error in the giving of State's Instruction No. 3 which reads:

"The elements which distinguish the crimes with which the defendant is charged in this case are as follows:

To be murder in the first degree it must be established by the evidence, beyond a reasonble doubt, that the killing was done purposely and with premeditated malice when the intention to take life unlawfully is deliberately formed in the mind and the determination meditated upon before the fatal stroke is given. There need be no appreciable space of time between the formation of the intention to kill and the killing. They may be as instantaneous as successive thoughts. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and meditation on the part of the slayer.

Malice, in law and as used in the statute defining murder, is not confined to anger, hatred, revenge, or ill will toward one or more individuals, but it is intended to denote an action flowing from a wicked and corrupt motive; a thing done with a bad or malicious intent, where the fact has been attended by such circumstances as carry with them the plain indication of a heart regardless of social duty and fatally bent on mischief. Express malice is that condition of a person's mind which shows a deliberate intention unlawfully to kill a fellow creature. Express malice is established when it has been shown by the evidence beyond a reasonable doubt that the act resulting in death was done with deliberate mind and a formed design unlawfully to kill a human being. To be murder in the first degree, it must be established by the evidence, beyond a reasonable doubt, that the killing was unlawful and done with premeditated malice."

Appellant objected to the language "[T]here need be no appreciable space of time between the formation of the intention to kill and the killing. They may be as instantaneous as successive thoughts." This language, it is argued, "omits the requirement that there be time for premeditation."

The phrases "no appreciable space of time" and "as instantaneous as successive thoughts" appeared in a similar instruction considered by this Court in *Frances* v. *State,* (1974) 262 Ind. 353, 316 N.E.2d 364. The Court said of that instruc-

tion: "The instruction is a precise statement of the law and can in no way be impugned." 316 N.E.2d at 367.

Appellant also objected to State's Instruction No. 5, which stated:

"While it is necessary that every essential element of the crime charged against the accused must be proved by the evidence beyond a reasonable doubt, this does not mean that all incidental or subsidiary facts must be proved beyond a reasonable doubt. Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of the testimony is to be determined from the whole body of the evidence. A circumstance considered apart from other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances, it may be so well supported as to remove all doubt as to its existence. Acts considered apart from other evidence may appear innocent, but when considered with other evidence may import guilt."

This instruction was approved by a majority of this Court in *Ringham* v. *State*, (1974) 261 Ind. 628, 308 N.E.2d 863, 866 (DeBruler, J., dissenting). It was not error to give this instruction.

Appellant objected to State's Instruction 6, which instruction was as follows:

"The flight of a person immediately after the commission of the crime with which he is charged, if there was such flight, is a circumstance which may be considered by you in connection with all the other evidence to aid you in determining his guilt or innocence."

Appellant argues that the instruction "invaded the province of the jury by commenting on a bit of evidence and thus giving it weight and emphasis." The instruction was proper. It did not command the jury to consider flight as evidence of guilt, but informed them that flight was a circumstance which the jury *may* consider. It did not annul the authority of the jury as the trier of fact to draw or not to draw inferences it might deem appropriate from any evidence of flight. It did not suggest what weight or value should be given by the jury to any evidence of flight or

inference of guilt which the jury might choose to make. *Dedrick* v. *State*, (1936) 210 Ind. 259, 2 N.E.2d 409.

Appellant's next claim of error relates to two instructions given by the trial court on the availability of voluntary intoxication as a defense. State's Instruction No. 8 read:

"Voluntary intoxication will not excuse crime. If the defendant was voluntarily drunk, it was his own fault, and he cannot claim any immunity by reason of his intoxication. It was his duty to keep sober, and if he voluntarily permitted himself to become intoxicated, and while so intoxicated he committed the crime charged in any form, he is guilty and should be punished precisely the same as though he had been sober. It is not the law that a man may voluntarily become intoxicated and commit crime and escape punishment by reason of such intoxication; on the contrary, it is the law that he cannot use his own voluntary intoxication to escape the consequences of his acts while so intoxicated."

Appellant's Instruction No. 9 read:

"While voluntary intoxication is generally not a defense, intoxication may relieve a defendant of responsibility for a crime if the crime involves a specific intent and if the defendant was so intoxicated as to be incapable of forming or entertaining the required specific intent. If you find from all of the evidence that the defendant was so intoxicated from alcohol as to be incapable of forming or entertaining the required specific intent then he must be found not guilty."

Appellant argues that *Snipes* v. *State*, (1974) 261 Ind. 581, 307 N.E.2d 470, held that an instruction such as State's Instruction No. 8 was an erroneous statement of law, and that an instruction in the form of appellant's Instruction No. 9 was correct. In *Snipes* only the former instruction was given. Here the jury received the State's instruction to the effect that voluntary intoxication is not a defense in general, and appellant's instruction that voluntary intoxication may preclude the formation of specific intent. Together the instructions constitute an accurate statement of the law; the first states the general rule and the second the exception. Instructions are to be considered as a

whole. *Cockrum* v. *State,* (1968) 250 Ind. 366, 234 N.E.2d 479.

Appellant finally urges that there was not sufficient evidence to support the verdict. Specifically appellant alleges lack of evidence of the element of premeditation, and of appellant's sanity at the time of the shooting.

As we have often stated before, in reviewing the allegation of insufficient evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the verdict of the jury. *Asher* v. *State,* (1969) 253 Ind. 25, 244 N.E.2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer the existence of each element of the offense beyond a rasonable doubt. *Smith* v. *State,* (1970) 254 Ind. 401, 260 N.E.2d 558.

It is necessary to a conviction of first degree murder that the appellant kill with *premeditated* malice.

"In order that there may be such premeditated malice as will make a killing murder in the first degree the thought of taking life must have been consciously conceived in the mind, the conception must have been meditated upon, and a deliberate determination formed to do the act. Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneous as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree." *Everett* v. *State,* (1934) 208 Ind. 145, 149-150, 195 N.E. 77, 79.

In *Maxwell* v. *State,* (1970) 254 Ind. 490, 260 N.E.2d 787, the appellant had pointed a gun at the victim for the space of time required for a witness to turn away and turn back. This Court held that "the pointing of the gun and the shooting were not simultaneous, but rather separated by a time lapse, sufficient for apellant to have deliberated upon his intent." 245 Ind. 490, 495, 260 N.E.2d 787, 790.

Here there was testimony that appellant pulled his gun, pointed it at his wife and shot her. This evidence was sufficient for the jury to infer that appellant had sufficient time to, and did, deliberate upon the intent and the moral quality of the design to take life.

Whenever the issue of insanity is raised, the State must prove the accused sane beyond a reasonable doubt. *Johnson* v. *State*, (1970) 255 Ind. 324, 264 N.E.2d 57. "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Hill* v. *State*, (1970) 252 Ind. 601, 251 N.E.2d 429.

There was direct testimony by one of the psychiatric witnesses, Dr. Harris, that appellant did not, in his opinion, lack capacity to appreciate the wrongfulness of his conduct or conform his conduct to legal requirements. This testimony alone was sufficient for the jury to find appellant sane. Appellant places great weight on evidence of emotional stress and unusual behavior on his part; while these may have existed, they do not automatically require that appellant be found insane. Many people who commit crimes have emotional problems and behave abnormally. The very fact that a person commits a violent crime indicates that he has difficulty functioning normally in society. But to be relieved of criminal responsibility for his acts, a person must meet the legal standard of insanity. Even had the jury believed all of appellant's witnesses, they could still have reasonably found him sane.

The conviction is ordered affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 354 N.E.2d 236.