Oliver Charles Williams *v.* State of Indiana.

[No. 677S441. Filed August 31, 1978.]

*Jeffrey A. Lockwood,* of Alexandria, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant, Oliver Charles (O. C.) Williams was tried by jury and found guilty of first degree murder.

Ind. Code § 35-13-4-1 (Burns 1975). He received a life sentence. On appeal he presents three issues:

(1) whether the evidence of premeditated malice was sufficient;

(2) whether the evidence negating his claim of self-defense was sufficient;

(3) whether a revolver was properly permitted to be introduced into evidence.

## I.

Appellant first argues that there was insufficient evidence of malice and premeditation. Upon such allegations we must construe the evidence most favorably to the State and see if there is substantial evidence of probative value from which a reasonable jury could infer these elements beyond a reasonable doubt. *Whitfield* v. *State,* (1977) 266 Ind. 629, 366 N.E.2d 173; *James* v. *State,* (1976) 265 Ind. 384, 354 N.E.2d 236; *Horton* v. *State,* (1976) 265 Ind. 393, 354 N.E.2d 242.

The following evidence was heard by the jury and is determinative of these issues. Appellant, Oliver Charles (O. C.) Williams, and a companion Barnes drove to the Planet Club in Anderson, Indiana. In the parking lot Barnes spoke to the decedent Lee who was standing near his car. An argument ensued between Williams and Lee in which they exchanged insults. No threats were made by either. Williams and Barnes thereafter left the club in their car and about the same time Lee left in his; the cars left in opposite directions. In a few minutes Barnes on the passenger side noticed that Lee was following them in his car and was riding their bumper. Appellant Williams drove his car off the road and stopped, and Lee "swished" on by them. Williams then followed Lee and passed by him after some maneuvering by both, and "angled" over in front of Lee and almost brought his car to a stop.

At this point in time, according to a witness who stood on a nearby sidewalk, Lee's car "just barely touched" the rear

of appellant Williams' car and then it "took off backing up." Williams with gun in hand then got out of his car while it was still gradually moving forward. Barnes told him, "O. C. no don't." Williams then ran back toward the Lee car and aimed the gun in the direction of it. Barnes testified for the State on direct examination that appellant Williams then fired the first shot. On cross-examination he recanted and testified that he did not know who fired the first shot, but adhered to his story that he saw Williams with his gun raised and pointed at the Lee auto when he heard the first shot. Williams and Lee then exchanged fire; approximately ten shots were fired in all. Appellant was wounded and Lee shot to death by appellant.

We believe this is evidence from which it would have been validly inferred that appellant acted with malice and premeditation. With regard to the element of malice it was stated in *McKinstry* v. *State,* (1975) 264 Ind. 29, 338 N.E.2d 636:

> "Blackstone defined malice, which even then distinguished murder from other homicides, as 'any evil design in general; the dictate of a wicked, depraved and malignant heart.'" 264 Ind. at 35.

In *Brown* v. *State,* (1933) 206 Ind. 223, 189 N.E. 133, this Court defined malice as follows:

> "The charge is a malicious killing, and to sustain it that fact must be attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief." 206 Ind. at 225.

And furthermore as has been stated in *James* v. *State,* (1976) 265 Ind. 384, 354 N.E.2d 236:

> "It is necessary to a conviction of first degree murder that the appellant kill with *premeditated* malice. 'In order that there may be such premeditated malice as will make a killing murder in the first degree the thought of taking life must have been consciously conceived in the mind, the conception must have been meditated upon, and a deliberate determination formed to do the act. Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneous as successive

thoughts can follow each other, the perpetrator may be guilty of murder in the first degree.' *Everett* v. *State*, (1934) 208 Ind. 145, 149-150, 195 N.E. 77, 79." (Original emphasis.) 265 Ind. at 391.

The jury was warranted in concluding that appellant, by reason of the prior insults and the challenge presented by Lee's driving, decided to stop Lee and quickly shoot and kill him thereby ending their controversy once and for all. The jury could infer that this design to kill sprang from ill-will and hatred for the victim, and under the circumstances was fierce and merciless. In furtherance of this plan, he forced the Lee car to stop, jumped out of the car with loaded pistol in hand, ran toward the Lee car with gun raised and pointed at that car, and the exchange of fire then immediately occurred. The jury was further warranted in inferring that the plot to kill was made while appellant was yet driving his car and immediately before or at the time he pulled in front of the Lee car. He then took the loaded gun in hand and jumped out of the car and aimed and fired his weapon at the decedent. While the time for reflection was short, there was time for sequence of events to occur and for Barnes to tell appellant, "O. C. no don't". The conclusion of the jury that the killing was attended by premeditated malice is supported by the evidence.

## II.

We likewise believe that the evidence related above also permitted the valid inference that appellant did not act in self-defense. The burden is on the State to negate self-defense. *Johnson* v. *State*, (1971) 256 Ind. 579, 271 N.E.2d 123. In *White* v. *State*, (1976) 265 Ind. 32, 349 N.E.2d 156, we stated the test to be applied in deciding this issue:

"When we review a self-defense claim, we determine if there is any substantial evidence of probative value from which the jury could have determined beyond a reasonable doubt, that appellant did not act in self-defense. Appellant must have acted without fault, been in a place where he had a right to be, and been in real danger of death or great bodily

harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm. The State has the burden of showing that appellant did not meet one of these requirements." 265 Ind. at 35.

The jury could have believed that appellant forced the Lee car off the road. Appellant then quickly emerged from his car and advanced upon the Lee car as it was backing away, pointed his loaded revolver at it, and immediately thereafter the exchange of gunfire occurred. From this it would reasonably be concluded that appellant did not act without fault. Appellant argues that the statement of Barnes that appellant fired the first shot was not substantial evidence of such fact. Assuming, however, that there was no evidence from which the jury could have decided which of the two fired the first shot, such a lacuna in the evidence, under the circumstances shown here, including the immediacy of this exchange of fire, would not have rendered the State's evidence negating the defense of self-defense insufficient.

Appellant also argues that the jury failed to consider that his actions may have been reasonable under the circumstances which included the placement of these events in an all-black neighborhood of Anderson. There is no indication that the jury failed to consider such fact. Appellant also contends that the jury must consider his conduct justifiable upon application of standards of his "community." While we do not believe that such standards exist by which appellant's conduct would be deemed reasonable, to the degree that such disparities may exist and may need to be considered in arriving at a just result in a criminal case, the jury, selected with a view towards representing the whole community, does so.

### III.

Appellant argues that the revolver should not have been received into evidence because the witness could not properly identify it and because the three hours for which the gun was hidden behind the trash cans constituted a break in its "chain-of-custody." The chain-of-custody

foundation is not required, of course, for periods before the evidence comes into the possession of law enforcement personnel. *Thornton* v. *State,* (1978) 268 Ind. 456, 376 N.E.2d 492. But the relevancy and materiality of all evidence must be established as a precondition of its admission. The asserted materiality of State's Exhibit No. 11 is that it is the weapon used in the killing. Its identification as that weapon depends upon Barnes' ability to recognize it as such. We believe that his testimony was sufficient for this purpose. A possibility of error inheres in all human perception; the candor with which Barnes recognized his own fallability does not vitiate the evidentiary value of his prior testimony that State's Exhibit No. 11 was the same gun given him by appellant. There was no error in admitting the weapon.

The conviction is affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 379 N.E.2d 981.