ROOSEVELT LOVE *v.* STATE OF INDIANA

[No. 2-777A285. Filed December 18, 1978. Rehearing denied March 6, 1979.]

*Harriette Bailey Conn, [Mrs.]*, Public Defender of Indiana, *Robert W. Hammerle*, Deputy Public Defender, *David P. Freund*, Deputy Public Defender, *Bobby Jay Small*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Daniel Lee Pflum*, Deputy Attorney General, for appellee.

CHIPMAN, P.J. — Appellant-defendant Roosevelt Love was charged with the offense of second degree murder,[1] but convicted by a jury of voluntary manslaughter.[2] He was also convicted of two additional offenses

---

1. IC 1971, 35-1-54-1 (Burns Code Ed.) repealed effective October 1, 1977.
2. IC 1971, 35-13-4-2 (Burns Code Ed.) repealed effective October 1, 1977.

of unlawfully carrying a firearm[3] and aiming a weapon.[4] Love was sentenced on March 1, 1977.

We find no reversible error and now affirm the court's judgment.

## FACTS

Ricky Tellis, the homicide victim, entered the El Morroco Tavern in Anderson, Indiana at approximately 4:00 p.m. on January 3, 1975. He proceeded directly to the restroom where he was soon found on the floor bleeding from some type of head wound. Initially it was believed that Tellis had fallen and injured his head since none of the patrons or employees at the tavern had heard any unusual noise after he entered the restroom. It was later determined by an autopsy that Tellis had been shot and that the bullet entered the right rear side of his head. The bullet passed through the victim's brain, and was recovered in the left temple area. The cause of death was diagnosed as a cerebral hemorrhage caused by a gunshot wound.

The Anderson police did not have a suspect to the Tellis homicide until January 27, 1975. On that day a cook at the El Morroco Tavern, and fellow employee of the defendant, apparently implicated Love in the shooting of January 3, 1975. The police questioned Roosevelt Love and he admitted shooting Tellis but claimed the shot was fired accidentally as the victim grabbed for the gun.

## ISSUES

Love raises the following issues on appeal:

1. The court erred in admitting a knit hat (State's exhibit 12) over defendant's objections.

2. There was insufficient evidence to convict appellant of (a) voluntary manslaughter, (b) aiming a firearm and (c) carrying a handgun without a license.

3. The court erroneously sentenced Love on voluntary manslaughter and aiming a firearm since both offenses arose out of the same operative facts.

3. IC 1971, 35-23-4.1-3 (Burns Code Ed.).

4. IC 1971, 35-1-79-5 (Burns Code Ed.) repealed effective October 1, 1977.

ISSUE I:   Identification of exhibit and chain of custody

An important exhibit in the State's case was a knit hat that was purportedly worn by Tellis and was identified as exhibit 12. This hat was admitted into evidence over Love's objection that it was not properly identified and that there was an insufficient chain of custody leading up to its introduction. The significance of this hat was that tests conducted by personnel of the Anderson police laboratory established that the gun was discharged at least thirty (30) inches from the victim's head and that it was fired from an uncocked position which would require some fifteen (15) pounds of pressure on the trigger.[5]

Love argues that the hat was not sufficiently identified in order to be admitted since the emergency room nurse stated that it was similar to the one worn by Tellis when he arrived at the hospital. The second portion of appellant's argument on this issue is that the State should be required to establish a chain of custody commencing with the ambulance attendant since he was an "agent of the State" and that since the attendant did not recall such a hat, there was a fatal break in the chain of custody.

The State contends that the admission of the hat into evidence went to its weight and not its admissibility.

## DECISION

We find that the hat was properly identified and that the court did not err in allowing exhibit 12 into evidence.

The record discloses that Tellis was wearing a knit hat when he entered the tavern and when he was found on the floor of the restroom.

5.   The tests conducted by the Anderson Police laboratory technician established that there was a hole in the knit hat and that the edge of the hole had come in contact with metal. The hat contained no nitrates and the test firing of Love's .32 caliber revolver demonstrated that nitrates were deposited up to thirty inches from the end of the barrel. In addition, the bullet removed from Tellis' head had a tear in the metal jacket that was the same as when the gun was fired in the uncocked position. Rounds that were fired in the cocked position did not have this characteristic tear. The laboratory technician testified that the tear resulted from a slight misalignment of the cylinder in the barrel when the gun was fired in the uncocked position. This tear did not occur when the revolver was fired in the cocked position. The technician also determined that five pounds of pressure required to fire the revolver in the cocked position and fifteen pounds of pressure in the uncocked position.

Although the ambulance attendant did not recall a hat on or with the victim, the emergency room nurse testified that Tellis had such a hat when he arrived at the hospital and that it was later delivered to an unidentified Anderson police officer. When the nurse was shown exhibit 12 she testified it was similar to the one on the victim when he arrived for treatment. Although the State offered the hat into evidence, the court properly sustained an objection at that time as to its admissibility.

The State then proceeded to establish that Officer Cain obtained the hat from a doctor at the Anderson hospital and delivered it to Detective Chambers. The detective tagged the hat and deposited it in the property room from which it was removed for testing purposes at the laboratory. The chain of custody commenced at the time the hat came into the possession of the law enforcement officers and continued up to the time it was introduced into evidence at the trial. This is the requirement based on the recent opinion of the Supreme Court in *Williams v. State* (1978), 269 Ind. 265, 379 N.E.2d 981.

In *Williams* a gun was found three hours after it was hidden behind trash cans and an objection was made as to the lack of identification and a fatal break in the chain of custody. Justice DeBruler pointed out that, "[T]he chain of custody foundation is not required, of course, for periods before the evidence comes into the possession of law enforcement personnel."[6] He further stated that relevancy and materiality of all evidence must be established as a proper foundation for an exhibit to be admissible. In the case at bar the hat was relevant and material since it established that the shooting did not occur under the circumstances as claimed by appellant.

ISSUE II:   Sufficiency of evidence

(a)   *Voluntary Manslaughter*—Love was indicted for the offense of murder in the second degree and at the conclusion of the State's case in chief he moved for a directed verdict. The motion was denied but the court indicated, without explanation, that it would instruct the jury to disregard this offense. The court instructed the jury in part as follows:

6.   *Williams v. State, supra* page 984.

The court is hereby withdrawing Count I of indictment for murder in the second degree, however, an included offense to the indictment for murder in the second degree is manslaughter. . . .

Love now contends that since the charge of murder in the second degree was withdrawn from the consideration by the jury that voluntary manslaughter must therefore stand on its own merits. He concedes that as a lesser included offense of murder the State does not have to prove sudden heat or passion but under the facts in this case voluntary manslaughter became the principle offense and not a lesser included offense. He argues that under these circumstances the State must prove the killing was voluntary and in a sudden heat. *Holloway v. State* (1976), 170 Ind.App. 155, 352 N.E.2d 523.

The State responds by pointing out that the appellant has cited no authority to support his theory that in this case all elements of manslaughter must be established when the murder charge is withdrawn from consideration by the court. The State further contends that there was sufficient evidence to support the verdict in that there was an intentional or voluntary killing of Tellis.

## DECISION

We agree with the State that there was sufficient evidence to convict Love of voluntary manslaughter. We further conclude that the burden of proof of the State is established at the commencement of the trial as to each offense and if, in this case, there is sufficient evidence that would support a conviction of murder in the second degree, then the jury can properly find the defendant guilty of the lesser included offense of voluntary manslaughter.

Love admitted that he shot Tellis, but claimed that the shooting was accidental and caused by the victim grabbing for the gun. Love told the Anderson police that:

> . . . Ricky (Tellis) asked me if I had my gun with me. Ricky felt my pocket and could feel the gun in it. Ricky told me to let him have the gun because he wanted to rob something. (sic) I took the gun out and handed it to Ricky. Ricky took the gun, pointed it at me and cocked the hammer. He told me to give him my money. . . .

This court, as has often been said, will neither weigh the evidence nor determine the credibility of witnesses, but will look only to the

evidence favorable to the judgment and all reasonable inferences arising therefrom. If substantial evidence of probative value will support the judgment, then it will not be disturbed. *Harris v. State* (1978), 268 Ind. 594, 377 N.E.2d 632; *Hutcherson v. State* (1978), 178 Ind.App. 8, 381 N.E.2d 877.

The evidence in this case established that Tellis was shot somewhat from the rear at a distance greater than thirty inches. In addition, the trigger required fifteen pounds of force in order to fire the weapon and a reasonable inference would be that it was not discharged accidentally but rather intentionally. Murder in the second degree is defined as the killing of a human being purposely and maliciously but without premeditation.[7] The evidence adduced at the trial would, therefore, support the conviction of murder in the second degree and hence the jury could find the appellant guilty of the lesser included offense of voluntary manslaughter. *McDonald v. State* (1976), 264 Ind. 477, 346 N.E.2d 569; *Gatchett v. State* (1973), 261 Ind. 109, 300 N.E.2d 665.

(b) *Aiming a Firearm*—Appellant claims that there was insufficient evidence to convict him of aiming a firearm. He bases this argument on two grounds: (1) his statement to the police was erroneously admitted into evidence since there was a failure to establish the *corpus delicti* and (2) no evidence that he intentionally aimed the gun at the victim Tellis.

*DECISION*

The evidence before the jury and the reasonable inferences would establish that Tellis obtained the gun from Love and then tried to rob him. Love grabbed the gun back and shortly thereafter Tellis was shot. The location of the head wound and the minimum distance that the gun would have to have been at the time it was fired (30 inches) would support the guilty verdict of aiming a firearm. *Thomas v. State* (1973), 260 Ind. 604, 298 N.E.2d 425.

The second portion of appellant's argument in support of the lack of evidence raises the question of the admission of Love's statement into evidence. This statement was taken by Detective Hanlan of the Anderson Police Department and was marked as exhibit

---

7. IND. CODE 35-1-54-1.

16. The record discloses that the defendant did not object to the admission of exhibit 16 and therefore has failed to preserve any error, if there was any error. *Blow v. State* (1978), 267 Ind. 632, 372 N.E.2d 1166; *Ortiz v. State* (1977), 265 Ind. 549, 356 N.E.2d 1188. We also conclude that fundamental error was not present in the court's admission of exhibit 16 and, therefore, the court did not err in allowing the statement to be introduced into evidence.

(c)  *Carrying a Handgun Without a License* — Appellant raises this issue of lack of evidence to support his conviction of carrying a handgun without a license. He bases his argument on, again, two grounds:   (1) the erroneous admission of his statement (exhibit 16) and (2) lack of evidence that Love carried a gun in an area not his fixed place of business.

We have previously decided the question raised by Love as to the admission of his statement into evidence and therefore we have examined the record as to the second portion of his argument; lack of evidence on carrying a gun not in his place of business.

The significance of this argument is that IND. CODE 35-23-4.1-3 provides:   (N)o person shall carry a handgun in any vehicle or on or about his person, except in his place of abode, or his property or fixed place of business without a license issued under this chapter.

### DECISION

There is evidence to establish that appellant committed an offense under IC 35-23-4.1-3.

The defendant's gun was established as the weapon that caused the death of Ricky Tellis. The shooting occurred in the restroom of the El Morroco Tavern. The defendant did not have a license to carry a handgun, and although the shooting did occur at his place of employment, there were certain statements made by him to the Anderson police that support his conviction:

> . . . I walked into the restroom to see what Ricky Tellis wanted. I had with me at that time my .32 caliber seven shot chrome plated revolver . . . I put the gun back in my pocket, walked out of the bathroom and out the Cedar St. entrance to the tavern. I then went straight home. . . . At home, I took out the spent cartridge out of the cylinder of the gun. . . .

III.   Sentencing

The last issue raised by Love is that the court erred in sentencing him on voluntary manslaughter and aiming a firearm. This is based on the rationale that the latter is a lesser included offense of voluntary manslaughter. Since both offenses arose out of the same operative facts, *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233.

## DECISION

The court properly sentenced Love under both voluntary manslaughter and aiming a firearm since aiming a firearm is not a lesser included offense of voluntary manslaughter.

The recent case of *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, is dispositive of this issue.

In *Elmore* Justice Pivarnik carefully analyzes the problem of the imposition of multiple punishments in multiple counts and points out that the ultimate decision as to whether this is permissible or not is largely controlled by the double jeopardy clause of the Fifth Amendment which provides that no person shall twice be put in jeopardy of life or limb. The opinion states:

> The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances. The inquiry into whether the offenses stem from the same act is merely the first step in the analysis. If the offenses are premised upon different acts, the problem is not so great. But where they do arise from the same act, we must proceed to determine whether the offenses charged are themselves the same, for the Double Jeopardy Clause was written in terms of the "same offense," not the same act. In other words, the fact that the offenses stem from the same act merely informs us that there is a potential problem; it is not a solution to the problem. *The ultimate focus is on the identity of the offenses, not on the identity of their source.* (emphasis added)

Voluntary manslaughter is defined as the voluntary killing of any human being without malice expressed or implied, in a sudden heat.[8]

---

8.   IND. CODE 35-13-4-2.

Aiming a weapon, on the other hand, is defined as being committed by any person over the age of ten years, with or without malice, who purposely points or aims any pistol, gun, revolver or other firearm, either loaded or unloaded, at or toward any other person.

The elements of these two offenses are obviously different and hence the identity of voluntary manslaughter is different than that of aiming a weapon. In accordance with the *Elmore* decision, the court did not err in sentencing Love on the two counts of voluntary manslaughter and aiming a weapon.

Finding no reversible error, the judgment is now affirmed.

Miller and Young, JJ. concur.

NOTE — Reported at 383 N.E.2d 382.